LE GRAND ROCKWELL, Plaintiff in Error,

*vs.*

JOEL A. DANIELS and MOSES HEMMENWAY, use, &c.,
of Defendant in Error, JACOB H. YOUNG.

ERROR TO WALWORTH CIRCUIT COURT.

The assignee of a chose in action takes it subject to all the equities of the same be-
tween the original parties.

R. signed, with others, a subscription paper, by which he agreed to pay D. & H.
$100 (the amount of his subscription) for the building of a steam mill at Elkhorn,
and D. & H. agreed to build the mill, and complete the same, before a certain
time fixed; before the expiration of the time for completing the mill, D. & H. as-
signed the subscription to Y., who delayed suing upon the subscription until
after the expiration of the time for completing the mill, which was not completed
within the time limited by the contract; *Held,* that in a suit brought on the sub-
scription in the name of D. & H. for the use of Y., R., the defendant, might re-
coup for damages on account of the non-performance of D. & H.

*Held,* further, that Y. took the contract subject to all the equities arising out of it,
and which followed it.

THIS was an action of assumpsit, commenced in the name of
the defendants in error, for the use of Jacob A. Young, against
the plaintiff in error, before H. Latham, Esq., a justice of the
peace for said county, to recover the balance alleged to be due
upon a certain subscription hereinafter set forth.

The statement of the cause of action was in writing, and as
follows :

[*Title of the suit.*] " The defendant will take notice, that this
suit is brought against you as a party to a certain contract en-
tered into by and between the said plaintiffs and the said de-
fendant, on the 26th day of July, A. D. 1851, and which will be
given in evidence under the declaration in this cause, and on
which the plaintiffs seek, by this suit, to recover a balance of
$40.00 due on the two last installments, payable according to the
stipulations in said agreement contained; and which is the only
cause of action upon which the plaintiffs seek to recover against
you; of which said agreement the following is a copy :

" Articles of agreement made and concluded this 26th day of

July, A. D. 1851, between Levi Lee, Edwin Hodges, Le Grand Rockwell (here follow the names of a number of persons, including the names of the parties who executed the agreement, as agents for the whole number of individuals named in the agreement), of the town of Elkhorn, and its vicinity, of Walworth county, parties of the first part, by Otis Preston, Hollis Latham, H. S. Winsor, Edward Winne and U. D. Meacham, agents of the said parties of the first part, duly and legally constituted and appointed such, to enter into this agreement in the name and by the authority of the said parties of the first part, and Joel A. Daniels, of Rockton, and Moses Hemmenway, of Laona, Winnebago county, Illinois, parties of the second part, as follows, to wit:

"The said parties of the second part, for the consideration hereinafter mentioned, do for themselves, their heirs, executors and administrators, promise and agree, to and with the said parties of the first part, to build and complete, in the town of Elkhorn, county of Walworth, and state of Wisconsin, at the place designated and set apart by the said parties of the first part, a steam flouring mill, within one year from the date of this agreement. The building to be of sufficient size and dimensions for three runs of stone, and to be made of brick of good merchantable quality; two runs of stone in said mill to be put in successful operation within one year from the date of this contract; two bolts to be placed in said mill, one for merchant and the other for custom work; the stones and bolts in said mill are to be of the best quality and material. The said mill is to be built of good materials, and in a good and workmanlike manner; the main building is to be of the size of 36 feet by 46 feet; the height of said building is to be at least two and a half stories above the basement.

"In consideration of the above undertaking and promise of the said parties of the second part to this agreement, the said parties of the first part, by their agents aforesaid, mutually promise and agree to and with each other, and to and with each and with every of us, and severally and each for himself alone, promises and agrees to and with the said parties of the second part, to pay to the said parties of the second part the sum of money, materials or labor, set opposite to our several and respective

names on the subscription paper, which is hereto attached marked ' A,' at the time and in the manner, and under the conditions following, that is to say : Each of the several persons to the first part of this agreement, severally, and not jointly, promises and agrees to and with the said parties of the second part, to pay one-fourth of the amount of his subscription set forth in said paper marked ' A,' within three months from the date of this contract, provided always, that in the judgment of the majority of the committee, as aforesaid agents, the work on said mill has progressed sufficiently to warrant such payment.    The three next quarterly payments are to be made according to the terms of such paper marked ' A.'

<div style="margin-left:auto">

(Signed,)                    " LEVI LEE,
" LE GRAND ROCKWELL.
" And others by
" OTIS PRESTON,
" HOLLIS LATHAM,
" H. S. WINSOR,
" EDWARD WINNE,
" U. D. MEACHAM, *Agents."*

</div>

The subscription paper marked A. read as follows :

" We the undersigned, citizens of the town of Elkhorn and vicinity, in view of the benefits and advantages that would accrue to us severally, from the erection in said town of a steam flouring mill, and the increased value that our property would receive by the erection of said mill in said town, severally promise and agree to and with any person or persons, to pay to said person or persons, at the time and in the manner below stated, the amount of money, materials and labor set opposite our several and respective names, in consideration that the said persons will enter into a contract to and with the undersigned, through our agents herein designated and appointed, to build within one year from the time said contract is entered into, a steam flouring mill of sufficient size and dimensions to run three runs of stone, and at such place in said town as shall be designated by that portion of the undersigned, who have subscribed to a majority in amount of money, materials and labor. Said mill is to be completed within one year from the time the said contract is entered into as aforesaid, with two runs of stone

in successful operation. The amount of materials, money and labor below subscribed, are to be paid in four equal payments; the first payment is to be made in three months from the time the contract is entered into, by our agents, for building said mill; the second payment is to be made in three months thereafter, and so on until the whole is paid.

"And the undersigned do hereby authorize, constitute and appoint Otis Preston, H. S. Winsor, Hollis Latham, Edward Winne and U. D. Meacham, our lawful agents to act for us, and in our names and stead, of and concerning the premises aforesaid, and hereby fully empower them, or a majority of them, to make and enter into a contract with any person or persons of sufficient means and ability for the erection, completion and putting into successful operation, a steam flouring mill in the manner and under the restrictions aforesaid. Our agents are hereby authorized to extend the term for completing said mill not to exceed in all six months.

| "Subscribers' names. | Observations. | $ cts. |
| --- | --- | --- |
| "Levi Lee, | | 200 00 |
| Le Grand Rockwell, | | 100 00 |
| U. D. Meacham, | | 200 00 " |

[Here follow the names of 56 other subscribers, the total amount of the subscriptions exceeding the sum of $2,000.]

The defendant pleaded the general issue, and gave notice of set-off; also of the failure of the plaintiffs and want of consideration; also of the non-performance of a condition precedent, and that the defendant on the trial would prove that the plaintiffs had not performed their said undertakings and promises, and that the defendant would recoup the damages arising from such non-performance on the part of the plaintiffs.

The cause was tried before the justice on the 17th day of June, 1854, and on the 20th day of June judgment was rendered by the justice, against the defendant below, for $40 damages, and $1.46 costs. The defendant below appealed from the decision of the justice, to the Circuit Court of Walworth county, where the cause was tried at the May term, 1855. The jury found for the plaintiffs $40 damages, and judgment was entered upon the verdict for $47.93 damages, and $27.44 costs.

By the bill of exception it appears, that on the trial, the plain-

tiffs by their counsel offered in evidence the written contract and the subscription paper, which instruments were objected to by the defendant's counsel, 1. On the ground that the promise in the subscription was void, because made to no particular person or persons. 2. Because of the want of mutuality of the same. 3. For variance between the subscription paper offered in evidence, and the paper set out in the plaintiffs' declaration, inasmuch as the paper set out in the declaration did not contain the name of Edward Winne, as one of the agents who made the contract; whereupon the plaintiffs' counsel, then and there, moved the court for leave to amend their declaration, by inserting the name of Winne in the subscription paper set out in the declaration, as one of the agents therein named to act for said subscribers; which motion was granted. The court then overruled the objections made by the defendant's counsel, and allowed the written contract and the subscription paper to be read in evidence, on the part of the plaintiffs; the defendant excepted.

The plaintiffs then claimed to recover forty dollars, admitting that the balance of the defendant's subscription had been paid.

The plaintiff then, after having examined two more witnesses, whose testimony is not necessary to be stated, rested.

The defendant then offered to prove that the plaintiffs Daniels and Hemmenway did not perform their part of said written contract; to the introduction of which evidence the plaintiffs' counsel objected as inadmissible under the plea of the defendant, and was sustained by the court. The defendant's counsel then asked leave to amend his plea, by adding notice of recoupment, for damages arising from non-performance of said contract by the plaintiff, which amendment was allowed by the court and made.

The plaintiffs' counsel thereupon offered to prove that before the several sums of money, in said contract and subscription paper mentioned, had become due by the terms thereof, and before the extension of the time limited by the terms of said contract for the performance of the same, on the part of the plaintiffs, and before any failure of performance on the part of said plaintiffs, the said several sums of money due and to become due from defendant to plaintiff, by the terms of the said contract and subscription, had been assigned to Jacob H. Young, the real plaintiff in interest in this cause, who paid therefor at the time of such assign

ment a good and valuable consideration, and called George H. Young, who testified to the facts stated in such offer, and also that Rockwell had received notice of such assignment shortly after the same had taken place. The counsel for defendant then admitted the said assignment to have been *bona fide* made.

The plaintiffs then offered and read in evidence the following paper:

"*To all to whom it may concern:*

"We, the undersigned, being the committee appointed by the inhabitants of the village of Elkhorn and vicinity, to superintend the building and completion of the Elkhorn Steam Flouring Mill, and whereas the builders agreed to have the same finished and completed before the 25th day of July, A. D. 1852, and whereas the said mill is not now completed, and whereas we the subscribers have power to extend the time for completing the said mill and putting her in full operation, and whereas we have, in pursuance of the power in us vested by the inhabitants aforesaid, extended the time for finishing and completing the aforesaid mill for six months.

"Given under our hands this    EDW'D WINNE,
24th July, A. D. 1852.         O. PRESTON,
                               U. D. MEACHAM."

" H. S. WINSOR consents for extension sixty days."

The plaintiff also called Hollis Latham, the other member of the committee, who testified that he also assented to the extension of time for completing the mill, and so gave the other members of the committee to understand.

The defendant's counsel then offered to prove, that the builders of the mill, said Daniels and Hemmenway, did not complete the mill, and that it was not completed within the time limited, either by the contract or the extension. To this offer the plaintiffs objected, and the objection was sustained by the court, and the offer rejected, the court holding that though the said defendant might recoup as against the said Daniels and Hemmenway, he could not recoup as against Young, the beneficial plaintiff, by reason that Young, as assignee, purchasing before the failure of performance on the part of the said Daniels and Hemmenway, was protected by such assignment against the equities of the said defendant arising from the contract assigned.

The above is all the material evidence given in the case, upon which the plaintiffs obtained judgment for forty-five dollars, with costs.

*Winsor and Smith*, for the plaintiff in error.

*J. W. Carey*, for the defendants in error.

*By the Court*, SMITH, J.   It will be admitted by all, that Young, the plaintiff in interest, took the assignment of the subscription paper, subject to all the equities between the original parties at the time of the assignment.   It was a mere chose in action, not assignable at law, and could not be sued upon in the name of the assignee.   The subscription was for one hundred dollars, payable in quarterly installments, the last of which became due in one year.   The contract of Hemmenway and Daniels required them to complete the mill within one year; to wit, by the 25th day of July, 1852.   On the 24th day of July, 1852, the committee appointed by the subscribers, in pursuance of authority vested in them (as is claimed), extended the time for the completion of the contract for the term of six months.   We make no note here of the exceptions taken to the form or validity of such extension, but for the present assume it to have been regular.   Then the plaintiffs were bound to complete the mill by the 25th of January, 1853, and the whole subscription of the complainant became due and payable on the 25th of July, 1852.   But before the subscription became due, and before the mill was required to be completed, the plaintiffs Daniels and Hemmenway, assigned the subscription to Young, some time in November, 1851, and notice of such assignment was given to the subscribers.   At the time when the last installment became due, there remained unpaid on the subscription of Rockwell forty dollars, to recover which this suit was brought.

It seems quite clear, that Young could obtain no further rights by virtue of the contract and the assignment thereof, than such as had accrued, or would accrue, by virtue thereof to Daniels and Hemmenway.   It is only necessary to know their rights from time to time in order to enable us to understand what are the rights of Young, for whose use this suit is brought.

But it is contended that as the whole of the subscription became due the 25th day of July, 1852, and as the time for completing the mill was extended, and as such extension did not work a postponement of the payment of the subscription, there was then a perfect right of action thereon in Young or Daniels and Hemmenway for his use, and no subsequent failure or forfeiture, or breach on their part, could affect such right. This proposition may be very true, and yet the error of the court below in excluding the evidence on which the claim for recoupment was based, is not cured or relieved. The assignment of the subscription paper did not make it better. Whatever cause of action there was, or arose upon it, was in Daniels and Hemmenway, either for their own use, or that of another in their name. On the 27th day of July, 1852, Daniels and Hemmenway had a cause of action (assuming for present purposes that the subscription was good and valid) for the balance due upon the subscription. Had they *then* brought suit, they would have recovered the whole balance due, if there were no other objection than the non-fulfillment of their contract. But if they had waited until the time for the fulfillment of their contract had elapsed, and they had failed at length to perform, does any one doubt that the defendant could recoup to the amount of the plaintiffs' claim, provided the damages for their breach of contract should equal that amount? Had the plaintiffs sued upon the subscription immediately after it became due, no doubt the defendant would have been put to his action to recover damages consequent upon the breach of the contract by the plaintiffs. But if they delay suit until the breach occurs on their part, then the law of recoupment applies to avoid a circuity of actions. And we are unable to perceive how the assignee stands in any better position than the plaintiffs. The fact that the subscription paper was assigned before due, can make no difference. It is not negotiable. It contains upon its face full and perfect notice of the consideration, and of all the equities between the parties. The material and substantial equity was based upon the building of the mill according to the terms of the contract. That was disclosed in the very terms of the subscription. No one could fail to perceive it. The equitable obligation to pay was based upon the corresponding obligation on the part of the plaintiffs to build; and, although

they may have had a legal right to demand and enforce the payment before the expiration of the term for the complete performance on their part, yet if they did not avail themselves of such right until by their failure they had subjected themselves to damages, the law will not turn the defendant over to his action for such damages, but will permit him to recoup so much as may be requisite to balance the claim of the plaintiffs, if they shall equal such sum.

Now the equities between the parties were thoroughly disclosed by the terms of the subscription, and no transfer or assignment could separate those equities from the terms of the contract, or extinguish them, and whoever took the subscription, took it subject to all the equities necessarily connected with it and inseparable from it. Young might have sued in July, 1852, but he would have sued in the right and in the names of the plaintiffs, and could have recovered just what they were entitled to recover and no more. The paper informed him of the consideration on which it was based, and of the obligation of his assignors to complete the contract. He must have been aware that in case they failed to perform, that consideration would be impaired. He doubtlessly relied upon their ability and good faith to perform their contract, and delayed suit until after the time of performance had elapsed. As he took the chose in action subject to all its equities, it was not in his power to extinguish them, however he might have enforced a legal right. By delaying suit he took the same risk that the plaintiffs would have taken. Although in July, 1852, he might have had a cause of action, and although the after conduct of Hemmenway and Daniels could not defeat it, yet it should be remembered that the proposition of the defendant was not offered to defeat the plaintiffs' cause of action, but to affect the amount of damages which they ought to recover. The law of recoupment is peculiar and grows out of the same transaction between the parties; is confined to the particular transaction and its incidents. A set-off does not defeat the plaintiffs' cause of action, but the law permits a distinct cause of action against the plaintiff, in the defendant, to be interposed, affecting in whole or in part the amount of damages. Recoupment differs from set-off in that, in regard to the former, both the cause of action in the plaintiff, and the right to recoup in the

Rockwell vs. Daniels et al.

defendant, grow out of the same subject matter and are correlative. *Barbour's Law of Set-Off*, 26–28, 3 *Hill*, 171, and the numerous cases there cited. The right of the defendant to recoup in case the plaintiffs should fail to perform their contract, and should sue him on his subscription, was the law of the transaction from its inception. It existed at the making of the contract, and at the time of its assignment, and the assignee had notice of that equitable right, and that it would become available to the defendant the moment the plaintiffs should commit a breach, and Young took it subject to such equity; and though he might probably have defeated that equity, after the extension, by bringing suit before breach, yet he could not extinguish it. But having delayed the suit until the breach had occurred on the part of the plaintiffs, and the right of recoupment had passed from an inchoate into an operative or vital existence, he cannot now divest his subscription from the rights and equities which originally attached to it, ripened and matured as they are by his own delay.

It is unnecessary to inquire whether or not the assignment and notice were sufficient to bar a set-off or other defence of which the assignee had no notice, because the defence here set up was subject to express notice by the terms of the subscription itself.

We are of the opinion, therefore, that the court below erred in excluding the evidence of a breach of contract on the part of the plaintiffs to build the mill; and we are of the opinion that the defendant was entitled to prove damages for such breach by way of recoupment, to the amount of the plaintiffs' claim, provided such damages amounted to so much.

There is another fatal error disclosed by the record. The amount claimed to be due in the declaration and bill of particulars, is forty dollars. That was the amount claimed on trial, and only that amount, as appears by the admissions of the parties in the bill of exceptions. The verdict and judgment are for forty-five dollars and there is no remittitur. But we have examined the other, and what we conceived to be the material error, as affecting the substantial rights of the parties; and the determination of this point renders it unnecessary to examine the other questions raised and discussed.

Judgment of the court below is reversed, and the cause remanded for further proceedings according to law.