HERRO, as Trustee for himself and others, joint venturers, Appellant, v. WISCONSIN FEDERAL SURPLUS PROPERTY DEVELOPMENT CORPORATION and others, Respondents: STATE CONSERVATION COMMISSION, Defendant: NATURAL RESOURCES BOARD, Impleaded Defendant.*

*No. 161. Argued February 4, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 433.)

[13] (1952), 342 U. S. 519, 72 Sup. Ct. 509, 96 L. Ed. 541.
* Motion for rehearing denied, without costs, on June 27, 1969.

88

100

For the appellant there were briefs by *Foley, Sammond & Lardner* of Milwaukee, and *Immell, Herro, Buehner, De Witt & Sundby* of Madison, and oral argument by *Marvin E. Klitsner* of Milwaukee.

For the respondents Wisconsin Federal Surplus Property Development Commission and Wisconsin Federal Surplus Property Development Corporation there was a brief and oral argument by *W. Scott Van Alstyne, Jr.,* of Madison.

For the respondent state of Wisconsin and cross-appellants State Conservation Commission and Natural Resources Board the cause was argued by *Steven M. Schur,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William F. Eich,* deputy attorney general.

HANLEY, J. The appeal presents the following issues:

(1) Are the allegations of the amended complaint, that Bong Corporation acted as agent for certain respondents, deemed admitted for purposes of testing the sufficiency of the complaint;

(2) Does sec. 285.10, Stats., authorize joinder of the state in this action;

(3) Does the trial court have jurisdiction over the persons of all respondents despite the sovereign immunity provision of art. IV, sec. 27, of the Wisconsin Constitution;

(4) Are any of the respondents bound by appellant's agreement with Bong Corporation;

(5) Does the complaint state a cause of action as to the 1,591 acres; and

(6) Does the complaint state a cause of action as to the 977 acres?

*Pleading Agency.*

As a part of paragraph 23 of his amended complaint the appellant alleged:

"Defendant Bong Corporation, in its dealings and relations with plaintiff with respect to the Bong air base lands, acted pursuant to authority of and as agent of defendants Bong Commission and Conservation Commission. . . ."

Appellant contends that the allegation of agency is admitted for the purpose of a demurrer. The trial court, citing *Hoyer v. Ludington* (1898), 100 Wis. 441, 76 N. W. 348, held that the allegation of agency was a conclusion of the pleader and that the allegation was to be given no weight in testing the sufficiency of the complaint.

The *Hoyer Case, supra,* does not stand for such a broad proposition. In that case the defendant employed an agent to sell a piece of *land.* The agent was alleged to have made some false statements in the course of his employment which caused the plaintiff to buy some *stock.* The subsequent complaint alleged that the false statements of the agent were within the scope of his authority. The specific holding of the case was that a demurrer did not admit the truth of the conclusion that

the false statements about the *stock* were within the scope of the authority of an agent who was employed to sell *land*. The court also stated in that case that a special agent employed to sell land cannot bind his principal by representatives outside the subject matter of his agency. The citation to the *Hoyer Case* does not shed any light on how to properly plead an agency relationship.

There is an annotation in A. L. R. 2d which specifically discusses the manner and sufficiency of pleading agency in contract actions where the pleading is attacked by demurrer. No Wisconsin cases are cited therein, but the general rule appears to be:

". . . the courts have permitted a large degree of generality in pleadings in which the party attempting to enforce the contract against the principal attempts to affirmatively allege the agency. Accordingly, it has been held that general allegations that the defendant acted 'by' or 'through' an agent are sufficient to allege both the basic fact of the agency relationship and that the agent had authority to do the acts relied upon.

". . .

"Where an attempt is made to specifically allege that the agent was in fact authorized to make the contract or agreement sued upon, it has usually been held that averments of authority expressed in the most general terms are sufficient." Annot. (1956), 45 A. L. R. 2d 586. *See also,* 3 Am. Jur. 2d, *Agency,* p. 701, sec. 344.

The Wisconsin statutes state in sec. 263.03 that a complaint shall contain:

"(2) A plain and concise statement of the ultimate facts constituting each cause of action, without unnecessary repetition."

In light of the above we hold that an allegation of an agency relationship and an allegation of authority as pleaded in the amended complaint are deemed admitted by demurrer.

The respondents do not really contend that agency was improperly pleaded here. They do maintain, however, that the Bong Commission and the Conservation Commission were specifically forbidden by both legislation and the Wisconsin Constitution to enter into an agency relationship with the Bong Corporation. Whether or not that allegation has a basis in fact forms a large part of the fourth issue in this case and will be further discussed in this opinion.

*Does Sec. 285.10, Stats., Permit Joinder of State?*

"285.10 **State party defendant; judgment.** The state may be made a party defendant in any action to quiet title under the provisions of s. 281.01 or between other parties, when necessary to the proper determination of their rights. The complaint shall set forth with particularity the nature of the interest or lien of the state. But no judgment for the recovery of money or personal property or costs shall be rendered in any such action against the state."

If a plaintiff wants to join the state as a defendant, it is fundamental that he first shows that the state has consented to the suit.

"The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Art. IV, sec. 27, Wis. Const.

In this case the appellant is seeking either a declaratory judgment or a decree of specific performance. This court has already held that a declaratory judgment action against the state is barred by sovereign immunity. *Berlowitz v. Roach* (1947), 252 Wis. 61, 64, 30 N. W. 2d 256; *Kenosha v. State* (1967), 35 Wis. 2d 317, 323, 151 N. W. 2d 36. However, neither of those cases involved an equitable action concerning land. Appellant maintains that sec. 285.10, Stats., consents to equitable actions concerning land so long as no judgment is given for the re-

covery of money or personal property. The respondents and the trial court argue that sec. 285.10 only consents to quiet-title actions.

There have only been two cases which interpreted the language of sec. 285.10, Stats. (formerly sec. 262.10) since it took its present form in 1921.[7] Neither case contains significant information on the question now raised, but each has some pertinency.

*Fulton v. State Annuity and Investment Board* (1931), 204 Wis. 355, 236 N. W. 120, involved the foreclosure of a mechanic's lien. The court held that a state agency (the mortgage holder on the premises) was a proper party to the case because of sec. 262.10 (now 285.10), Stats. The case is only significant because the state agency was held to be a proper party even though the action was not a quiet-title action.

*Glendale Development v. Board of Regents* (1960), 12 Wis. 2d 120, 106 N. W. 2d 430, involved an equitable action to cancel a deed from the board of regents to a dummy building corporation. The title to the property before the deed was given was in the board of regents, a state agency. The state was named a party defendant under 262.10 (now 285.10), Stats., but its demurrer was sustained by this court because

". . . the state of Wisconsin is not a necessary party to the proper determination of the rights of the parties . . . ." *Glendale Development v. Board of Regents, supra,* at page 127.

Again there was no mention of the fact that sec. 285.10 only consented to quiet-title actions.

We think that sec. 285.10, Stats., should be construed as consenting to any equitable action involving land where no judgment for the recovery of money or personal property is sought against the state. Such a holding permits the state to be made a defendant when declaratory judg-

---

[7] See ch. 474, Laws of 1921.

ment, injunctive relief, or specific performance was sought because the state claims, or is alleged to claim, an interest in land adverse to the plaintiff. In such a situation the state is certainly "necessary to the proper determination" of the rights of the parties.[8]

*Sovereign Immunity.*

Having concluded that sec. 285.10, Stats., permits the joinder of the state to this action, any further discussion of sovereign immunity is unnecessary. Consent to sue the state is also consent to sue the agencies of the state. Thus, the Conservation Commission, the Bong Commission, and the Natural Resources Board would all be proper parties under sec. 285.10.

*Who Is Bound by the Agreement?*

This is really the central issue of this case. It is an issue difficult to resolve because intricately involved in

---

[8] In this case the amended complaint alleged:

"Upon information and belief, the 1,591 acres designated for residential and other urban uses, under the plan referred to in paragraph 5 above, has been deeded in outright fee to defendant Conservation Commission, the State of Wisconsin (Conservation Commission), or the State of Wisconsin, under the jurisdiction of defendant Conservation Commission. The State of Wisconsin has also purportedly attempted to transfer the 977 acres of land intended for industrial and executive airport uses, under the plan referred to in paragraph 5 above, from the defendant Bong Corporation to the defendant Conservation Commission. The State of Wisconsin is made a party defendant to this action by authority of Section 285.10 of the Wisconsin Statutes because its presence may be necessary to the proper determination of the rights of the parties inasmuch as (1) title to either or both of such tracts of land is, or may be, in the State of Wisconsin under the jurisdiction of the Conservation Commission or otherwise; and (2) the State of Wisconsin has purportedly modified, abolished or otherwise attempted to change the status, powers and authorities of certain of the other defendants, along with the rights and obligations between the plaintiff and some, or all, of such other defendants."

the question is the validity and effect of the state's use of a dummy corporation. This case presents a good time to quickly review the purpose and development of the dummy corporation device in Wisconsin since this is the first time a case has come to the court wherein the state is trying to circumvent a broad development plan. Rules which have developed when the dummy corporation device was being used as a shield should be reviewed in light of the fact that it now appears that the state is using the corporate device as a sword.

It has long been recognized that the purpose of the dummy corporation was to legally avoid the effect of certain provisions of the Wisconsin Constitution. Among the constitutional provisions to be avoided were art. VIII, sec. 10:

"The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works; . . ."

and art. VIII, sec. 4:

"The state shall never contract any public debt except in the cases and manner herein provided."

This court defined "internal improvement" in *State ex rel. Owen v. Donald* (1915), 160 Wis. 21, 79, 151 N. W. 331, and in *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 343, 65 N. W. 2d 529. It is not necessary to go into any review of what is meant by that term as it is beyond dispute that the development plan involved in this case was within the definition of "internal improvement." The point is that dummy corporations were created pursuant to legislative authority to engage in this kind of work on behalf of the state. The profits from these corporations went either to the state or a state agency. The directors of the dummy corporations were usually also the members of the state agency which created the corporation. Nonetheless, the separate corporate identity of the dummy corporation permitted

the state to claim that it was not participating in the internal improvement. The exact claim first came to this court, and the arrangement was then approved, in *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 60 N. W. 2d 873.

The problem of avoiding a state debt was encountered long before the beginning of dummy corporations. In *Connor v. Marshfield* (1906), 128 Wis. 280, 107 N. W. 639, this court avoided financial roadblocks by declaring that no "debt" is created when a city or state enters into a contract unless that contract exposes some pre-existing funds or property to liability. As long as the state could lose no more than the benefits of a contract entered into, no state debt was created.

The principle of state indebtedness was first combined with a dummy corporation in *Loomis v. Callahan* (1928), 196 Wis. 518, 220 N. W. 816. A short review of that case will indicate how the system was designed to work.

The Board of Regents of the University of Wisconsin (a state agency) held title to certain unimproved lands upon which they wanted a fieldhouse built. To accomplish this end, the land was leased to a dummy corporation, the Wisconsin University Building Corporation. The members of the dummy corporation were also the officers of the board of regents. The land was leased to the dummy corporation for a term of fifty years for the consideration of one dollar. The land was immediately leased back to the board of regents for a period of time shorter than fifty years at an annual rental which was calculated to permit the dummy corporation to make payments on whatever funds had to be borrowed to build the field-house. Whenever the building costs were retired, the dummy corporation was required to turn over the structure to the board of regents. The dummy corporation then mortgaged its leasehold interest to another state agency (although it was also empowered to issue bonds to any private party) and the funds necessary for the

construction of the fieldhouse were obtained. This court found that the arrangement did not constitute a state indebtedness because the board of regents was free to abandon the plan at any time. Under the terms of the lease running from the building corporation to the board of regents, the state's only obligation was to pay the annual rent. Only the proceeds from the leased property were to be used to pay the rent. Thus the court could state:

". . . It is not contended that the state can be coerced into applying to the payment of its rent either its general revenues or property owned by it at the time of the lease by the building corporation. . . ." *Loomis v. Callahan, supra,* at page 525.

A problem subsequently arose with the type of arrangement entered into in the *Loomis Case.* In *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 65 N. W. 2d 529, this court conceded that the board of regents in the *Loomis Case* had become "indebted" at least insofar as the leasehold mortgagee could have foreclosed the mortgagor's interest in the property if the dummy corporation failed to make the required payments under the plan. Of course, the only reason the dummy corporation would fail to make payments would be because the state had failed to pay its rent to the dummy corporation. The "debt" arose because the state had, prior to the lease and leaseback, owned the unimproved lot free from encumbrance. If the state defaulted on the agreement, the leasehold mortgagee would have the use of the lot for the term of the lease if he foreclosed.

"For clarity of expression it would be difficult to improve upon the following statement appearing in the opinion of the Illinois supreme court in *Joliet v. Alexander* (1902), 194 Ill. 457, 462, 62 N. E. 861:

" 'One who pawns or pledges his property and who will lose the property if he does not pay, is indebted although the creditor has nothing but the security of the property;

. . .' " *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 353, 65 N. W. 2d 529.

The state found a way around the problem in *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. 2d 577. There again the state agency wanted a building on its lot. The land was leased to a dummy corporation, but when it was leased back, a provision waiving any right of re-entry or foreclosure in case of any default by the state agency was included. This court held that:

"The state in no manner has pledged its income for the payment of the rentals, nor has it assigned the same. The rentals are not an enforceable charge upon the fund from which they are provided. There can be no foreclosure and consequent loss of state-owned property . . . ." *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 44, 72 N. W. 2d 577.

The dummy corporation scheme was used in *Glendale Development v. Board of Regents, supra,* to permit the development of a commercial shopping center on state-controlled land. In that case land owned by the state agency was sold to a dummy corporation so that private development could take place. The fact that the property was still controlled by the state did not mean that the state itself was engaging in "internal development" or creating a "state debt."

This court had occasion to determine the relationship between dummy corporation property and the state in *State ex rel. Wisconsin University Bldg. Corp. v. Bareis* (1950), 257 Wis. 497, 507, 44 N. W. 2d 259:

" '. . . the naked legal title is in the corporation but held exclusively for the benefit of the . . . [state].' "

It is with that background that the present case comes on for review. In all the preceding cases the state was necessarily relying on a distinct corporate structure to create debt and to participate in internal improvements.

In this case the Bong Corporation's functions became so intermixed with those of the Bong Commission that even the legislature seems to have become confused.

Under ch. 671, Laws of 1959, which created the Bong Commission, the legislature bestowed the following functions:

1. To determine whether federal surplus lands should be acquired;

2. To incorporate for purposes of buying, developing, and disposing of the surplus lands;

3. To study and plan how the surplus lands should be developed;

4. To give approval before any lands acquired by a corporation may be incorporated into or annexed to a municipality; and

5. To approve all proposed corporation sales or leases.

As originally developed, the Bong Commission was to study and decide. The Bong Corporation was to acquire, develop and dispose of property. The activities of the Bong Corporation were to be financed by issuing bonds, but the bonds were not to constitute a debt of the state.

The Bong Commission was given an additional function by ch. 467, Laws of 1963:

*"Upon request of the Wisconsin federal surplus property development commission, the [conservation] commission shall sell any lands thus requested within Bong air force base when owned by the [conservation] commission in outright fee to the Wisconsin federal surplus property development commission, or its designee, at fair market value."*

This legislation was passed in order to make the 1,591 acres available for private development. In order to be consistent, this "call" on the 1,591 acres should have been given to the Bong Corporation because the Bong

Commission did not have the authority to own land. Nonetheless, under the statute, the Bong Commission could designate the Bong Corporation to take title to the land. Note that the statute says

"Upon request . . . the [conservation] commission *shall* sell any lands thus requested . . . ." (Emphasis supplied.)

Subsequently, the appellants entered into the Agreement. The question which must now be answered is what part did the Bong Commission play in the arrangement?

The appellant has alleged in his complaint that the Bong Corporation was the agent of the Bong Commission. The statutes readily disclose that only the Bong Corporation had the authority to acquire, develop and dispose of property. The statutes also disclose that the Bong Corporation alone could raise funds for its endeavors. Admittedly the Bong Commission desired to have its plans developed. Admittedly the work of the Bong Corporation gave some purpose and expression to the plans and decisions of the Bong Commission. However, both the Bong Commission and the Bong Corporation were creatures of the legislature. Their powers and functions were limited by their creating legislation, and the knowledge of those powers and functions should be imputed to persons who deal with them. Thus, there could be no agency here.

Nevertheless, the Bong Commission had specific authority from the legislature to approve all proposed corporation sales or leases. To that extent the Bong Commission participated in the sales and leases of the Bong Corporation and it was a party thereto. By approving and ratifying the Agreement the Bong Commission was actually performing a role delegated to it by legislation.

It seems to us that by approving and ratifying the Agreement the Bong Commission bound itself to "call" for the 1,591 acres when so directed by the Bong Corporation. Although the Bong Commission did not have any specific authorization to enter into contracts regarding its authorized functions, it did have the authority to demand delivery of a deed to the 1,591 acres. The authority to do the act itself would seem to carry the authority to contract regarding the act. Thus, we conclude that the Bong Commission was a party to the Agreement with the Bong Corporation and the appellant. By the contract, the Bong Commission agreed to "call" for the 1,591 acres when requested to do so by the Bong Corporation.

It is difficult and maybe impossible to separate the consideration received by the Bong Commission from that received by the Bong Corporation. But it is certainly obvious that the Bong Commission had the same overall desires as the Bong Corporation in regard to this development (after all, the members of the Commission and the Corporation were the same).

We hold that the appellant had a vested right to purchase the 1,591 acres after entering into the Agreement.[9]

*Does the Complaint State a Cause of Action as to the 977 Acres?*

Prior to the passage of ch. 646, Laws of 1965 (the constitutionality of which is attacked on this appeal), the

---

[9] It is debatable whether the Conservation Commission could have transferred title to the 1,591 acres. However, appellant alleged in his complaint that:

"On information and belief the Conservation Commission had acquired a land contract vendee's interest in said 1591 acres, and was in fact the equitable owner thereof, prior to May 5, 1965."

appellant had a contract to lease and an option to purchase the 977 acres. Prior to August 10, 1966 (effective date of ch. 646, Laws of 1965), the Bong Corporation had title to the 977 acres. Nothing stood in the way of performance; and the complaint alleges that all of the parties were ready to perform.

Ch. 646 purported to transfer the Bong Corporation's title to the 977 acres to the Conservation Commission. Appellant complains that this is an unconstitutional taking of private property without just compensation.

The trial court held that ch. 646 was constitutional because either

1. The 977 acres was transferred to the Conservation Commission subject to all the contractual duties owed by the Bong Corporation; or

2. The appellant had a proper remedy under inverse condemnation.

The trial court concluded that a cause of action was stated for specific performance as to the 977 acres.

The Conservation Commission and the Natural Resources Board contend that they were not parties to the Agreement and that they cannot be bound thereby.

Now we must determine the rights of dummy corporations. If we are going to recognize that they are separate and distinct from the state, then it must be determined that the property owned by the dummy corporation is not the state's property. We hold that the legislature cannot transfer property from a dummy corporation without just compensation. The legislature, as well as the public, must treat the dummy corporation as a distinct entity.

We do not agree with respondents' contention that the legislation was in the nature of a condemnation and that the remedy is an action for "just compensation" under sec. 32.10, Stats. (inverse condemnation).

Sec. 32.10, Stats., states that when property has been occupied by a body possessing the power of condemna-

tion, but where the ordinary condemnation procedures have not been followed, the owner of land may institute the proceedings.

It seems quite clear that there has been no "occupation" of the land in question here. The state merely sought to transfer title to the land by legislation. This court stated in *Konrad v. State* (1958), 4 Wis. 2d 532, 538, 91 N. W. 2d 203:

"Undoubtedly the state could, if it chose, condemn private property for public use. That is an attribute of sovereignty. The exercise of the right is limited by sec. 13, art. I, Const., declaring:
" 'The property of no person shall be taken for public use without just compensation therefor.' "

When the state itself condemns, just compensation must be provided at the same time. When a proper state agency condemns, the individual owner can proceed under inverse condemnation. Inverse condemnation does not apply against the state because the state has not consented to be sued.

Appellant has standing to raise the constitutionality of ch. 646, Laws of 1965, because it affects his right to specific performance against the Bong Corporation.

Unless and until there is a proper condemnation, either under ch. 32, Stats., or by occupation by a proper state agency, the appellant has stated a proper cause of action for specific performance in regard to the 977 acres.

Insofar as ch. 646, Laws of 1965, attempts to transfer the property of the Bong Corporation without the payment of just compensation therefor, it is unconstitutional.

*Does the Complaint State a Cause of Action as to the 1,591 Acres?*

Assuming that appellant could show, as he alleged in his complaint, that the Conservation Commission could have passed title to the 1,591 acres prior to August 10,

1966, appellant had a vested contractual right to purchase that property at fair market value. That right was destroyed by ch. 646, Laws of 1965, when the legislature took away the Conservation Commission's authorization to sell Bong air base lands by amending sec. 24.085 (1), Stats.

Appellant challenges the amendment of sec. 24.085 (1) as a law "impairing the obligation of contracts":

"No . . . law impairing the obligation of contracts, shall ever be passed . . . ." Art. I, sec. 12, Wis. Const.

There can be no doubt that the Agreement was entered into in reliance on the legislative authorization of the Conservation Commission to sell the Bong lands at the "call" of the Bong Commission. In fact, the authorizing legislation was adopted solely to make the Agreement come into being.

In *State ex rel. Damman v. The Commissioners of School & University Lands* (1855), 4 Wis. 432, 436 (*414, *418), it was stated:

"There can be no doubt but these express provisions of the statute, at the time the contract of sale between the purchaser and state was made, entered into, and became a part of such contract, and no subsequent law could be enacted which could change the conditions or impair the obligations imposed by them. . . ."

If a person enters into a contract with a dummy corporation, which is both created and limited by the statutes, he is entitled to rely on the provisions of the statutes. If the legislature decided that it wanted this land back, it has its powers of condemnation which can be properly exercised.

Insofar as ch. 646, Laws of 1965, attempted to withdraw the authorization of the Conservation Commission to sell the 1,591 acres to the Bong Commission or its designee, it was unconstitutional as an impairment of the obligation of contracts.

The complaint states a proper cause of action for specific performance of the Agreement as regards the 1,591 acres.

## Conclusion.

Our decision in this matter should not be construed as denying the proper use by the state or its agencies of the power of condemnation. Unquestionably, the Conservation Commission (or its successor under the Kellett Bill) can condemn both the 977-acre tract and the 1,591-acre tract if it desires. Just compensation would have to be paid. The appellant is given the right to buy the property at "fair market value;" likewise, the Conservation Commission would have to pay to appellant "fair market value" if he owned the land and condemnation proceedings were initiated.

We do not approve of the procedure adopted by the state in this matter. It is obvious that fair play and equitable principles have been disregarded.

*By the Court.*—That part of the order sustaining the demurrer of the state of Wisconsin, the Bong Commission, and the Bong Corporation is reversed; and that part of the order overruling the demurrers of the Conservation Commission and the Natural Resources Board is affirmed.