ERICKSON OIL PRODUCTS, INC., a Wisconsin corporation, Plaintiff-Appellant,†

v.

STATE of Wisconsin, Wisconsin Department of Transportation, Wisconsin Department of Development, Defendants-Respondents,

S/S/G CORPORATION, a Wisconsin corporation, Defendant.

Court of Appeals

*No. 93–2154. Oral argument March 22, 1994.—Decided April 5, 1994.*

(Also reported in 516 N.W.2d 755.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jeffrey R. Ansel, Eric J. Nystrom* and *Craig A. Brandt* and the oral argument by *Eric J. Nystrom* of *Winthrop & Weinstine, P.A.* of St. Paul, Minnesota.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Charles R. Larsen*, assistant attorney general, and the oral argument by *Charles R. Larsen*.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. The two issues in this appeal are whether the State has consented to be sued for specific performance of a contract for the sale of State surplus real estate and, if not, whether this results in an unconstitutional deprivation of a certain remedy guaranteed by WIS. CONST. art. I, § 9. Because the State legislature has not clearly and expressly consented to be sued, the

State retained its sovereign immunity, and because there is no right to hold a sovereign liable and, in any event, a remedy is available to Erickson, the trial court's judgment granting the State's motion to dismiss the lawsuit is affirmed.

In the fall of 1991, the City of Hudson, the Wisconsin Department of Transportation (DOT) and the Wisconsin Department of Development (DOD) issued a written request for proposal requesting bids for the purchase and development of excess State-owned land at a highway interchange in Hudson. The project included the private development of a State of Wisconsin tourist information center encompassing 12.936 acres. On October 15, 1991, Erickson Oil submitted a State-drafted offer to purchase along with $81,000 earnest money to the DOT. The offer to purchase specifically required the DOT to either approve the offer on or before January 3, 1992, or return the earnest money no later than January 17, 1992. In December, the DOT's district director informed Erickson that it was the only developer to submit an offer and that it would be the developer. In March 1992, the State agencies issued press releases announcing that an agreement had been reached with Erickson for development of the project. However, in a May 20, 1992, letter, the DOT rejected Erickson's offer to purchase and stated that the $81,000 down payment would be returned.

In response, Erickson commenced an action against the DOT and the DOD asserting claims for breach of contract, equitable estoppel and promissory estoppel. Erickson sought only injunctive relief to prevent the State from conveying the land to a third party and specific performance of the land sale contract

between Erickson and the State.[1] The State filed a motion to dismiss the claims against it, arguing that these claims and the requested relief were barred by the sovereign immunity doctrine, and therefore the court lacked personal jurisdiction over the State in this action. The court granted the State's motion and entered a judgment of dismissal.[2]

We treat the trial court's dismissal the same as a summary judgment decision as the underlying facts are undisputed, and therefore we apply the standards set forth in § 802.08, STATS., in the same manner as the trial court. *See Maas v. Ziegler,* 172 Wis. 2d 70, 78, 492 N.W.2d 621, 624 (1992). We are also required to interpret state constitutional and statutory provisions, which are questions of law that we decide without deference to the trial court. *See Elliott v. Donahue,* 169 Wis. 2d 310, 316, 485 N.W.2d 403, 405 (1992).

Erickson does not dispute that under the sovereign immunity rule, the State cannot be sued unless it con-

---

[1] Erickson also asserted claims against S/S/G Corporation for intentional interference with contractual relations and intentional interference with prospective contractual relations. These pending claims are not involved in this appeal, nor is S/S/G Corporation a party to this appeal.

[2] Although the State in its brief indicates that it does not agree with all the facts alleged in Erickson's complaint, it concedes that when addressing a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept the facts alleged in the complaint as true. *See Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985). Therefore, for the purposes of this appeal only, we will assume the State accepted Erickson's offer to purchase.

42

sents. *See* WIS. CONST. art. IV, § 27.[3] Additionally, the consent must be clearly and expressly stated. *Fiala v. Voight,* 93 Wis. 2d 337, 342-43, 286 N.W.2d 824, 827 (1980). This immunity is procedural in nature and, if properly raised, deprives the court of personal jurisdiction over the State as well as its agencies. *Lister v. Board of Regents,* 72 Wis. 2d 282, 291, 240 N.W.2d 610, 617 (1976).

Most recently, in *State v. P.G. Miron Constr. Co.,* 181 Wis. 2d 1045, 512 N.W.2d 499 (1994), the supreme court held that the sovereign immunity doctrine did not apply when the construction company invoked its right to arbitration of a dispute under its contract with the State. The court decided that there was no reason for it to determine whether the legislature expressly consented to arbitration because it was not a "suit" as the term is used in context of the sovereign immunity doctrine. It defined suit as "any proceeding by one person or persons against another or others *in a court of law* in which the plaintiff pursues, *in such court*, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or *equity*." *Id.* at 1053, 512 N.W.2d at 503 (emphasis added).

The court reminded us that it has consistently used the term "suit" in sovereign immunity cases as a reference to legal actions which seek resolution in a court of law where litigation typically involves formalized procedural and evidentiary rules and culminates with a trial. *Id.* It reasoned that on the other hand, arbitration is a method of alternative dispute resolu-

---

[3] "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." WIS. CONST. art. IV, § 27.

tion occurring outside the established or traditional tribunals of justice. *Id.* at 1054, 512 N.W.2d at 503. Here, Erickson has filed an action in a court of law seeking an injunction and specific performance of a contract. Although it is an equity action and no money damages are sought, it is still a "suit" barred under the asserted sovereign immunity doctrine unless the legislature expressly consented.

Erickson argues, however, that the State has expressly consented to the court's jurisdiction in two ways. First, under § 775.10, STATS., the State has specifically consented to be made a defendant in actions where a party claims an interest in land adverse to the State and only equitable remedies such as injunctive relief or specific performance are sought. Second, by granting the DOT specific authority to enter into contracts for the sale of State-owned lands, the State has expressly consented to personal jurisdiction in the courts when disputes over those contracts arise. We disagree.

Section 775.10, STATS., provides:

> The state may be made a party defendant in any action for a *declaration of interests* under s. 841.01 or between other parties, when necessary to the *proper determination of their rights.* The complaint shall set forth with particularity the nature of the interest or lien of the state. But no judgment for the recovery of money or personal property or costs shall be rendered in any such action against the state. (Emphasis added.)

Erickson claims that when the State accepted its offer to purchase, it had an equitable title or interest in the real estate and therefore its suit for specific performance is permitted against the State as a

declaration of interests under § 841.01, STATS., which provides:

> (1) Any person claiming an interest in real property may maintain an action against any person claiming a conflicting interest, and may demand a declaration of interests.
> (2) Subsection (1) does not apply to lessee's interests in leases of one year or less.

Thus, the initial question we must answer is whether Erickson's action for specific performance is the same as demanding a declaration of interests. We conclude that it is not.[4] Chapter 841, STATS., permits persons claiming an interest in real property to maintain an action for declaration of interests against another person claiming a conflicting interest. It is an action to quiet title. Under § 841.10, the court's judgment declares only the interest of the parties.[5]

On the other hand, Erickson seeks an injunction to prevent the sale of the land to a third party and specific performance of the accepted offer to purchase. An action for specific performance of a contract for the sale of real property is not an action to declare interests. Its purpose is not to extinguish rights and liabilities of the parties to the contract, but rather is for the purpose of requiring the seller to convey the land. In the context of a contract for the sale of land, the action for specific

---

[4] Because we conclude an action for specific performance is not an action demanding a declaration of interests, it is unnecessary to determine whether Erickson had an interest in real property under the accepted offer to purchase.

[5] Section 841.10, STATS., in relevant part provides: "(1) The judgment shall declare the interests of the parties. The judgment or a certified copy may be recorded in the office of the register of deeds of each county in which the land lies."

performance is an equitable remedy and rests in the discretion of the trial court. *Anderson v. Onsager,* 155 Wis. 2d 504, 513, 455 N.W.2d 885, 889 (1990). When deciding whether to grant specific performance, the trial court must be satisfied that the claim for a deed is fair, reasonable and possible. *Id.* at 512, 455 N.W.2d at 889. This is substantially different from an action to quiet title and declaration of interests to real property as provided for in § 841.01, STATS.

Next, Erickson cites *Herro v. Wisconsin Fed'l Surp. Prop. Dev. Corp.,* 42 Wis. 2d 87, 107, 166 N.W.2d 433, 444 (1969), for the proposition that § 775.10, STATS., should be construed as the State's consent to any equitable action involving land where no judgment for the recovery of money or personal property is sought against the State. Erickson reads *Herro* too broadly. The supreme court in *Herro* did not address the issue presented in this case. Rather, it dealt with a situation where the plaintiff was suing a private corporation for specific performance of a land contract. However, title to the land was in doubt because several defendants including a corporation created by a state agency may have held title to the land. Although the supreme court held that § 285.10, STATS., (the present § 775.10, STATS.) should be construed as the State's consent to any equitable action involving land where no judgment for the recovery of money or personal property is sought against the State, it continued by stating:

> Such a holding permits the state to be made a defendant when declaratory judgment, injunctive relief, or specific performance was sought *because the state claims, or is alleged to claim, an interest in land adverse to the plaintiff.* In such a situation the

state is certainly "*necessary to the proper determination*" of the rights of the parties. (Emphasis added.)

*Herro,* 42 Wis. 2d at 107-08, 166 N.W.2d at 444.

The supreme court was merely explaining that § 775.10, STATS., permitted the State to be named in the lawsuit because the State claimed an interest in the land adverse to the plaintiff and it was therefore necessary for the State to be named for the proper determination of the rights of the parties. Here, title to the real estate is not questioned. Nor is this a case between other parties where the State is perceived to have an interest making its presence necessary for a proper determination of their rights. We do not read *Herro* to mean that under § 775.10, the State has expressly consented to be sued for specific performance of a contract for the sale of its real estate.

Next, we reject Erickson's contention that because the legislature has provided in § 84.09(5), STATS., for the DOT to sell, with the governor's approval, land in its custody at a public or private sale, this necessarily implies a consent to sue the State for specific performance of a contract for such a sale.[6] There are no Wisconsin cases on this issue, but Erickson cites decisions in other states for the proposition that legislative authorization to contract necessarily implies consent to sue the State. *See Grant Constr. Co. v. Burns,* 443 P.2d 1005, 1009-10 (Idaho 1968); *Kersten Co. v. Department of Social Servs.,* 207 N.W.2d 117, 118-19 (Iowa 1973);

---

[6] In relevant part, § 84.09(5), STATS., provides that "[s]ubject to the approval of the governor, the department may sell at public or private sale property of whatever nature owned by the state and under the jurisdiction of the department when the department determines that the property is no longer necessary for the state's use for highway purposes . . . ."

47

*George & Lynch, Inc. v. State,* 197 A.2d 734, 736 (Del. 1964); *Ace Flying Serv., Inc. v. Colorado Dept. of Agr.,* 314 P.2d 278, 280 (Colo. 1957); *Carr v. State ex rel. DuCoetlosquet,* 26 N.E. 778, 779 (Ind. 1891).

In *Grant Constr.,* the Idaho Supreme Court reasoned that the State had waived its sovereign immunity by entering into and assuming legislatively authorized contractual obligations and thereby incurred legal rights and responsibilities similar to those of the individual citizen. It concluded, therefore, that an action for breach of contract against the State may be brought in the trial court. *Id.* at 1009-10. Likewise, the Delaware Supreme Court held:

> It must be assumed that the General Assembly, in granting to the State Highway Department the power to contract, intended that it should have power to enter into only valid contracts. A valid contract is one which has mutuality of obligation and remedy between the parties to it. 1 WILLISTON ON CONTRACTS (3rd Ed.) § 1. It follows, therefore, that in authorizing the State Highway Department to enter into valid contracts the General Assembly has necessarily waived the State's immunity to suit for breach by the State of that contract.

*George & Lynch,* 197 A.2d at 736.

Erickson asks us to adopt the reasoning of those jurisdictions and conclude that by authorizing the DOT to enter into contracts for the sale of State-owned land, the Wisconsin Legislature intended that such contracts be enforceable and binding on both parties and thus the legislature has consented to such suits to enforce these contracts. Otherwise, it contends, if the option to cancel on the part of one party to a bilateral contract goes so far as to render illusory such party's promise to

perform, there may be under certain circumstances an invalid contract.

Erickson correctly points out that in a growing number of jurisdictions the doctrine of sovereign immunity has been held not applicable to contracts.[7] The rationale behind many of these cases is that when a State legislature authorizes its State agencies to enter into a contractual relationship, it impliedly consents to be sued on that contract. Erickson is correct in asserting that both parties to a contract must be bound for the agreement to be a valid contract. While there must be mutuality of obligation between contracting parties, it is only required to the extent that both parties to an agreement are bound or neither is bound. *See* RESTATEMENT (SECOND) OF CONTRACTS § 79 (1981). Generally, where there is no other consideration for a contract, the mutual promises of the parties constitute

---

[7] South Carolina: *Kinsey Constr. Co. v. South Carolina Dept. of Mental Health,* 249 S.E.2d 900 (S.C. 1978); North Carolina: *Smith v. State,* 222 S.E.2d 412 (N.C. 1976); Oklahoma: *State Bd. of Pub. Affairs v. Principal Funding Corp.,* 542 P.2d 503 (Okla. 1975); Iowa: *Kersten Co. v. Department of Social Servs.,* 207 N.W.2d 117 (Iowa 1973); Missouri: *V.S. DiCarlo Const. Co. v. State,* 485 S.W.2d 52 (Mo. 1972); New Jersey: *P. T. & L. Constr. Co. v. DOT,* 288 A.2d 574 (N.J. 1972); Idaho: *Grant Constr. Co. v. Burns,* 443 P.2d 1005 (Idaho 1968); Delaware: *George & Lynch, Inc. v. State,* 197 A.2d 734 (Del. 1964); California: *Souza & McCue Constr. Co. v. Superior Court,* 370 P.2d 338 (Cal. 1962); Colorado: *Ace Flying Serv., Inc. v. Colorado Dept. of Agr.,* 314 P.2d 278 (Colo. 1957); Montana: *Meens v. State Bd. of Educ.,* 267 P.2d 981 (Mont. 1954); Nebraska: *Todd v. Board of Educ. Lands & Funds,* 48 N.W.2d 706 (Neb. 1951); Michigan: *Hersey Gravel Co. v. State Hwy. Dept.,* 9 N.W.2d 567 (Mich. 1943); Georgia: *Regents v. Blanton,* 176 S.E. 673 (Ga. App. 1934); Indiana: *Carr v. State ex rel. DuCoetlosquet,* 26 N.E.778 (Ind. 1891).

the consideration, and these promises must be binding on both parties or the contract fails for want of consideration. *See* 5A ARTHUR CORBIN, CORBIN ON CONTRACTS § 1179 (1964); RESTATEMENT (SECOND) OF CONTRACTS 363, comment c (1981).

However, because the State is obligated under a contract does not mean that a remedy to institute a suit in court for a breach is implied. Whether the State is liable on a particular contract is a different question from whether the State is immune from being sued by an aggrieved party on that contract. It has been generally recognized that

> [t]he rights and responsibilities of a state under an ordinary business contract are, with few exceptions, the same as those of individuals. Although it cannot be sued without its consent, the state, when making a contract with an individual, is liable for a breach of its agreement in like manner as an individual contractor. And while it may refuse to respond in damages, and leave a claimant without any remedy, as it may refuse to pay its bonds, the obligation remains.

*See* 72 AM.JUR.2D *States, Territories And Dependencies* § 88 (1974) (footnotes omitted). Hence, even assuming for the purposes of this appeal that the legislature intended its agency to enter into a valid contract for the sale of land, the State's contractual obligation remains, but it is the remedy for any recovery on a claim that is limited. In other words, the State may be contractually bound under its accepted offer to purchase, but the State has limited Erickson's remedy for a recovery on the alleged breach to the procedure under §§ 16.007 and 775.01, STATS.

50

Erickson argues persuasively as to why the State should not be allowed to invoke the sovereign immunity doctrine when a private party asserts the State has breached its contract to sell land and seeks only specific performance as its remedy. It is also difficult to comprehend how in reality the State's contractual obligation remains unless the private party has a remedy to enforce that obligation. From a public policy standpoint, we agree that a state government should be required to observe the same rules of conduct that it requires of its citizens. No other tenet in American jurisprudence has been so sharply criticized by the courts and legal scholars throughout the country as the doctrine of governmental immunity. For example, in *McCall v. Batson,* 329 S.E.2d 741 (S.C. 1985), the South Carolina Supreme Court abrogated in substantial part the doctrine of sovereign immunity after concluding the historic doctrine was archaic and outmoded. However, the court reasoned that the doctrine was a court-created rule and therefore may be court-abrogated.

While the historic arguments supporting the State's sovereign immunity doctrine as to contracts may arguably represent obsolete legal thinking, and those who enter into contracts should have an independent forum to determine their validity and to provide a remedy for breach of the contract, it is not for the courts in Wisconsin to preempt the legislature's function to determine when and how it may be sued. When the Wisconsin citizens by their constitution have expressly delegated to the legislature the task of determining when it will consent to suit, the courts have no right to preempt this legislative function.

The Wisconsin Supreme Court has expressed its disapproval of the State's sovereign immunity from suit and has urged the legislature to abrogate this "antiquated" doctrine. *See Fiala,* 93 Wis. 2d at 342, 286 N.W.2d at 827. Our supreme court, however, has remained firm in holding that the Wisconsin Constitution vests exclusive control over suits against the State and its agencies in the legislature, not in the courts. *See State ex rel. Teaching Assists. Ass'n v. University of Wisconsin-Madison,* 96 Wis. 2d 492, 510, 292 N.W.2d 657, 666 (Ct. App. 1980). "The doctrine of procedural immunity as to the state itself should be removed, but this change is directed to the legislature. The judiciary cannot step in where the legislature has failed to act to commence a change in the state's constitution." *Fiala,* 93 Wis. 2d at 341-42, 286 N.W.2d at 827 (quoting *Cords v. State,* 62 Wis. 2d 42, 48, 214 N.W.2d 405, 409 (1974)); *see also University of Wisconsin-Madison,* 96 Wis. 2d at 510, 292 N.W.2d at 666.

Thus, the supreme court has repeatedly and consistently construed WIS. CONST. art. IV, § 27, to mean that the legislature has the exclusive right to consent to a suit against the State and has stressed that consent would not be implied from legislation which was less than clear and express. The court's insistence on express authorization was emphasized in *Holzworth v. State,* 238 Wis. 63, 66, 298 N.W. 163, 164-65 (1941), where it found that although the safe place act imposed a higher duty of care on the State in maintaining public buildings, consent to sue the State would not be implied from the statute in the event the State violated that duty of care. In *Forseth v. Sweet,* 38 Wis. 2d 676, 690, 158 N.W.2d 370, 376-77 (1968), the court rejected the contention that the legislature had consented to

suit by enacting the indemnification statute (then § 270.58, STATS.). Later in *Fiala,* the court again refused to imply legislative consent to suit against the State from § 895.46, STATS., which grants indemnification by the state for judgments against public officers and employees arising out of acts committed within the scope of employment. Likewise, in *University of Wisconsin-Madison,* 96 Wis. 2d at 508, 292 N.W.2d at 665, the court rejected the argument that the court had jurisdiction to enforce an arbitration award against the State by virtue of the Wisconsin Arbitration Act, ch. 298, STATS.[8]

Here, the legislature did not expressly consent to be sued in § 84.09, STATS., nor did it even mention this possibility. The Wisconsin courts have concluded consistently that the legislature must clearly and expressly consent to the "suit" and we adhere to that principle. Therefore, we refuse to imply legislative consent to a suit in court when the legislature merely authorizes a State agency to enter into a contract.

This is especially important in light of §§ 16.007 and 775.01, STATS., where the legislature has "consented" to suit with the establishment of a specific claims procedure. Under § 16.007, a party may present a claim to the State claims board, which first holds a hearing and then makes a recommendation to the legislature to grant or deny the claim. If the legislature refuses to allow a claim against the State, the claimant may then under § 775.01 commence an action against the State. This is similar to the situation in *S.J. Groves & Sons v. State,* 444 N.E.2d 131 (Ill. 1982), where the Illinois Supreme Court reversed its court of appeals which held that the State, by entering into a highway

---

[8] Renumbered ch. 788, STATS., by Laws of 1979, ch. 32.

construction contract authorized by the legislature, had consented to be sued on that contract. The Illinois Supreme Court concluded that merely because the agency was authorized to enter into contract and would be obligated under that signed contract did not mean that a remedy to institute suit in circuit court was implied. It reasoned that the legislature had established a court of claims as the exclusive procedure for claims against the State and it was not for the courts to preempt that legislative function. *Id.* at 135-36.

Similarly, our State constitution has delegated to the legislature the exclusive function of determining when and how the State consents to be sued. Here, its only expression for consenting to be sued is expressed in §§ 16.007 and 775.01, STATS. If there are inequities resulting from the doctrine of sovereign immunity, it is the sole function of the legislature to act, not the courts.

Finally, Erickson argues that a holding that the State has not consented to suit against it for specific performance of the sale of real estate results in an unconstitutional deprivation of a certain remedy guaranteed by WIS. CONST. art. I, § 9.[9] We disagree. Historically, the Wisconsin Supreme Court has held the immunity from suit is a privilege which a sovereign may waive or refuse to waive at its pleasure. *See Apfelbacher v. State*, 160 Wis. 565, 577, 152 N.W. 144, 148 (1915); *The Chicago, M. & St. P. Ry. v. State*, 53

_____

[9] WIS. CONST. art. I, § 9, provides:

Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

Wis. 509, 513, 10 N.W. 560, 561 (1881). In *Cords,* 62 Wis. 2d at 52, 214 N.W.2d at 411, the court specifically rejected the argument that WIS. CONST. art. I, § 9, gave an injured party the right to sue the State and concluded there is no right of a citizen to hold the sovereign liable.

Additionally, as stated previously, the legislature has in fact provided a procedure for citizens to assert a claim against the State. As stated in *Cords,* 62 Wis. 2d at 52-53, 214 N.W.2d at 411: "Ch. 16 of the Wisconsin Statutes provides a procedure for submitting a claim to a state claims commission which may recommend to the legislature that the claim be paid. The plaintiffs also could obtain the help of their state representatives in introducing a private bill for their relief." This right was again referred to in *P.G. Miron Constr.,* 181 Wis. 2d at 1052, 512 N.W.2d at 503. Consequently, Erickson has a procedure available to it for a wrong it may have received although it may not be permitted to sue for specific performance. However, it is for the legislature to regulate the remedies for wrongs suffered, *Kerner v. Employers Mut. Liab. Ins. Co.,* 35 Wis. 2d 391, 400, 151 N.W.2d 72, 77 (1967), and the legislature may impose reasonable limitations on remedies available. *Metzger v. Department of Taxation,* 35 Wis. 2d 119, 129, 150 N.W.2d 431, 436 (1967).

Therefore, we conclude that the trial court's dismissal of Erickson's suit for injunction and specific performance based on the State's asserted sovereign immunity did not result in a deprivation of a certain remedy guaranteed by WIS. CONST. art. I, § 9. The judgment dismissing Erickson's suit is affirmed.

*By the Court.*—Judgment affirmed.