P. T. & L. CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. COMMISSIONER, DEPARTMENT OF TRANSPORTATION, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued January 11, 1972—Decided March 20, 1972.

*Mr. Theodore W. Geiser* argued the cause for appellant (*Messrs. Hughes, McElroy, Connell, Foley and Geiser*, attorneys).

*Mr. Stephen Skillman*, Assistant Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

WEINTRAUB, C. J. This matter is before us for the third time. Plaintiff seeks to recover $110,360.64, as the balance due upon an express contract with the State, which sum the State withheld, claiming damages in that amount for delay in the performance of the contract. The merits of the controversy have never been adjudged in any court. The sole question on all of the appeals was and remains whether plaintiff is entitled to have a court pass upon the claim.

On the first appeal, 55 *N. J.* 341 (1970), we held that the concept of sovereign immunity from suit upon an express contract had no sustaining roots in reason and probably none in relevant history; that the trial of claims against the State was appropriately a function of the judiciary; and that although the payment of a judgment might depend upon fur-

ther legislative action if moneys had not already been appropriated, still we should not assume the Legislature would be indifferent to our judgments. We stressed that "Obviously there should be an established forum in which all such claims may be presented as of right and upon known principles," and we noted that "other jurisdictions have held, on one theme or another, that a State may be sued in its own courts on contracts it authorized." 55 *N. J.* at 346. We accordingly remanded the case for trial.

Before a trial could be had, the Legislature enacted *L.* 1970, *c.* 98 (*N. J. S. A.* 52:4A–1), which read:

Except for actions founded upon the Constitution of this State or the United States or an express provision of the statutory laws of this State, no action shall be instituted or continued against the State or any department or other agency thereof for the recovery of money damages, whether based on contract or tort, where the cause of action accrues prior to July 1, 1971.

The trial court granted the State's motion to dismiss. That led to the second appeal. Upon that appeal the State disavowed any purpose in that statute to repudiate its contracts, saying that the aim was merely to permit the Legislature "to study the problems resulting from the *P. T. & L.* and *Willis* decisions." The reference to *"P. T. & L."* was to our first opinion in this matter, and *Willis* referred to *Willis v. Department of Conservation and Economic Development,* 55 *N. J.* 534, 540 (1970), where we held the judiciary should accept a like responsibility to adjudicate the tort liability of the State. Accepting the purpose of the 1970 statute to be to permit a study rather than to repudiate contractual obligations, we affirmed the judgment but reserved to plaintiff the right to appropriate relief in the light of legislative action or inaction before July 1, 1971, the terminal date specified in the 1970 statute. 57 *N. J.* 439 (1971).

On June 2, 1971 the Legislature adopted *c.* 187 extending the 1970 statute to April 1, 1972. Plaintiff moved before us to restore the cause to the calendar and we granted the motion.

The State contends (1) the statute created only a moratorium and did not repudiate the State's contractual obligations and (2) even if the statute did repudiate those obligations, still the State may withdraw its consent to be sued. We will deal first with the second proposition. As to it, the State agrees that contract rights are protected by the federal constitutional guarantees against the taking of property without just compensation or without due process of law. Indeed for that reason it was held in *Lynch v. United States,* 292 *U. S.* 571, 54 S. Ct. 840, 78 *L. Ed.* 1434 (1934), that the Congress could not annul policies of war risk insurance. See also *Perry v. United States,* 294 *U. S.* 330, 55 *S. Ct.* 432, 79 *L. Ed.* 912 (1935). But the State says that consent to be sued in such circumstances is a different matter, and this the State may withhold.

Relevant cases are *Beers for use of Platenius v. Arkansas,* 20 How. 527, 61 *U. S.* 527, 15 *L. Ed.* 991 (1858); *Bank of Washington v. Arkansas,* 20 How. 530, 61 *U. S.* 530, 15 *L. Ed.* 993 (1858); *South & N. A. Railroad Co. v. Alabama,* 101 *U. S.* 832, 25 *L. Ed.* 973 (1880); *Memphis and Charleston Railroad Co. v. Tennessee,* 101 *U. S.* 337, 25 *L. Ed.* 960 (1880); *Louisiana ex rel. Elliott v. Jumel,* 107 *U. S.* 711, 28 S. Ct. 128, 27 *L. Ed.* 448 (1883); *Baltzer v. North Carolina,* 161 *U. S.* 240, 16 S. Ct. 500, 40 *L. Ed.* 684 (1896). These cases do support the proposition that the State's denial of the remedy of suit will not alone warrant intervention by the federal courts. There are two underlying thoughts. One is that a State as a sovereign may withhold consent to suit within its own courts, and that as to the federal courts the Eleventh Amendment shields the State from a direct action against it. Another is that a judgment is of no value if payment depends upon a later appropriation, and thus, absent an appropriation, a court would be a mere auditor of the claim. Hence he who contracts with the State must look only to its good faith for payment.

 In none of the cases just cited did the State purport to repudiate its obligation. Hence those cases may not mean that a State may, by withholding its consent to be sued, prevent the federal courts from declaring invalid a repudiation of a contract under the federal constitutional guarantees we have mentioned or under the further guarantee in Article 1, § 10, of the United States Constitution that no State shall pass any law impairing the obligations of contract. In any event, if those cases do mean there may be no federal judicial relief in those circumstances because the State refuses to be sued, a State court may nonetheless entertain a suit. Whether a State is suable within its own courts without legislative consent is a matter of State constitutional law, and we have already held that our Constitution places in the judicial branch the responsibility to adjudicate controversies involving the State. And of course, in meeting that responsibility, our courts will enforce the federal guarantees as to contract rights, already cited, as well as the parallel guarantees in our State Constitution (*Art.* IV § 7, ¶ 3, prohibiting any law "impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made"; *Art.* I, ¶ 20, providing that private property shall not be taken for public use without just compensation; and the due process provision implicit in *Art.* I, ¶ 1).

We turn then to the first alternative proposition advanced by the State, that we should decline the controversy on the thesis that the statute merely enacts a moratorium. It may be questioned that the statute embraces this case,[1] but assuming it does, we think we should not refuse to adjudge the merits.

---

[1] The statute excepts from the moratorium "actions founded upon the Constitution of this State or the United States." As we have already said, both Constitutions forbid a State to repudiate its contracts. The question is whether a denial of liability upon an express contract would, if coupled with a refusal to permit suit, constitute a repudia-

It of course is true that contracts, public no less than private, are subject to the police power. See *Home B. & L. Assn. v. Blaisdell,* 290 *U. S.* 398, 54 S. Ct. 231, 78 *L. Ed.* 413 (1934); *El Paso v. Simmons,* 379 *U. S.* 497, 85 *S. Ct.* 577, 13 *L. Ed.* 2d 446 (1965); *New Jersey Highway Authority v. Sills,* 111 *N. J. Super.* 313 (Ch. Div. 1970), aff'd, 58 *N. J.* 432 (1971). Hence a moratorium could be enacted if required for the public welfare. But here the moratorium does not rest upon an overriding public need. There is no fiscal emergency. Nor is it suggested the State

tion in the relevant constitutional sense. We do not suggest a mere denial of liability upon the merits would itself generate a constitutional claim of a taking. Quite obviously it would not. But the question is whether there is anything less than a taking when the State unilaterally declares the claim is without merit and simultaneously refuses to provide a forum wherein the dispute may be adjudged as of right according to law. If such action is not a taking in a constitutional sense, surely precious little remains of the constitutional promise. Hence the question exists whether there is a constitutional issue here which would bring the case within the exception in the statute with respect to "actions founded upon the Constitution of this State or the United States." We need not decide that question, but we note that some of the cases holding the State may be sued on its contracts without its consent refer to the constitutional guarantees we have mentioned. *Ace Flying Service, Inc. v. Colorado Dept. of Agriculture,* 136 Colo. 19, 314 *P.* 2d 278, 283 (Colo. Sup. Ct. 1957); *Grant Construction Co. v. Burns,* 92 *Idaho* 408, 443 *P.* 2d 1005, 1009–1010 (Sup. Ct. 1968); see *George & Lynch, Inc. v. State,* 197 *A.* 2d 734, 736 (Del. Sup. Ct. 1964). We note, too, that it is said the constitutional prohibition against taking property for public use without just compensation is itself a consent to suit. *State ex rel. Smith v. 0.24148, 0.23831 and 0.12277 Acres of Land,* 3 Storey 439, 171 *A.* 2d 228, 231 (Del. Sup. Ct. 1961); 27 *Am. Jur.* 2d *"Eminent Domain"* § 478, *pp.* 408–409; 6 *Nichols, Eminent Domain* (Rev. 3d ed. 1965) § 30.1, *p.* 729. Where a taking is involved, our courts have long entertained the claim. Thus in *Haycock v. Jannarone,* 99 *N. J. L.* 183, 185, (E. & A. 1923), in holding that a property owner was entitled to an order upon the State Highway Commission to institute condemnation proceedings, the court said:

\* \* \* When the damages have been thus ascertained, it is not to be presumed that the Legislature has not, or would not, make provision to pay for the land which it had taken in advance of compensation for the benefit of the state. The creation of such an

is so overwhelmed with claims upon contract that the public interest demands time to prepare to meet them. Indeed the Subcommittee of the Joint Legislative Appropriations Committee continues to hear these claims; the statute does not halt that procedure. The only apparent purpose in proscribing judicial actions on the State's contracts is to permit the Legislature to decide whether to create some special tribunal to try them. We cannot find in that circumstance a sufficient reason to delay access to the courts.

We agree with *Lynch* that "Punctilious fulfillment of contractual obligations is essential to the maintenance of the credit of public as well as private debtors." 292 *U. S.* at 580, 54 S. Ct. at 844, 78 *L. Ed.* 1441. The judiciary shares that concern with its coordinate branches of government. Unlike claims in tort as to which the Legislature may understandably be troubled in deciding upon a substantive basis for State liability, there is no comparable difficulty when the claim rests upon an express contract. The State does not contend its contracts should be less binding than private ones. The sole question then is whether the established legal principles should be applied by the courts while the Legislature considers whether to establish other machinery. Surely the exercise by the courts of their familar role poses no threat to the public weal.

Indeed it would be singularly inappropriate to remit this plaintiff to the pursuit of a petition for relief before the legislative subcommittee. The contract was made in 1962 and apparently the dispute arose the next year. Since then plaintiff has presented three applications to the subcommittee, the last after the adoption of the 1970 moratorium statute. On each the subcommittee recommended payment and the Legislature approved and appropriated moneys. But on each

agency with the power to condemn implies that the Legislature will make provision to pay the award, otherwise we would have to assume that the state intended to violate the Constitution by taking land without compensation, a thought not to be tolerated.

occasion the item was vetoed, twice by the present Governor and once by his predecessor, on the ground that on the record before the subcommittee the Governor could not decide whether to agree or disagree with the Department of Transportation's continued opposition to payment. Thus the claim remains unresolved because, in the view of both Governors, the legislative process did not yield a suitable record. The judicial process would supply one.

We said earlier that "there should be an established forum in which all such claims may be presented as of right and upon known principles." 55 *N. J.* at 346. Nothing less can satisfy the fundamental demand for equality at the hands of government. We of course do not say the Legislature may not establish a special tribunal to hear these claims in that light, subject to appropriate judicial review. We hold only that meanwhile the courts can and should provide a forum.

The matter is accordingly remanded for trial upon the merits.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.