**KERSTEN COMPANY, INC., a corporation, Appellee,**

v.

**DEPARTMENT OF SOCIAL SERVICES of the State of Iowa, and State of Iowa, Appellants.**

**No. 55178.**

Supreme Court of Iowa.

April 25, 1973.

Richard C. Turner, Atty. Gen., and Lorna Lawhead Williams, Sp. Asst. Atty. Gen., for appellants.

Kersten, Opheim & Estes, Fort Dodge, for appellee.

LeGRAND, Justice.

This is an appeal under rule 332, Rules of Civil Procedure, from a denial of defendants' special appearance, which was based on the defense of governmental immunity from suit for alleged breach of contract. We affirm the trial court, and in doing so we necessarily overrule Megee v. Barnes, 160 N.W.2d 815 (Iowa 1968).

The parties agree this is a suit against the State and agree, too, a special appearance properly raises the question now confronting us. See Marquardt v. Maucker, 184 N.W.2d 684, 685 (Iowa 1971).

Until now we have said governmental immunity is firmly entrenched in our law and any change in its doctrine must come from the legislature. However, we are unwilling to continue that position under the facts alleged by plaintiff, and we therefore invoke our right to judicially renounce a rule which we judicially created. Our decision is based on a finding the State has impliedly waived its immunity to suit in this case.

This statement from Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P. 2d 107, 113 (1963) perhaps best expresses our philosophy:

"It has been urged by the adherents of the sovereign immunity rule that the principle has become so firmly fixed that any change must come from the legislature. In previous decisions * * * ture. this court concurred in this reasoning. Upon reconsideration we realize that the doctrine of sovereign immunity was originally judicially created. We are now convinced that a court-made rule, when unjust or outmoded, does not necessarily become with age invulnerable to judicial attack. This doctrine having been engrafted upon Arizona law by judicial enunciation may properly be changed or abrogated by the same process."

It is conceded we must overrule Megee v. Barnes, supra, if we are to affirm the trial court. Since we have determined to follow that course, we think it important to detail our reasons for doing so.

The facts in Megee are indistinguishable from those here. In Megee we held a university professor who alleged her contract of employment had been breached could not maintain an action for damages against the State because of governmental immunity. In the present case the Department of Social Services (hereafter called department) entered into an oral lease with plaintiff, who alleges the terms have been breached. The department's special appearance challenges the jurisdiction of the court solely on governmental immunity.

Once more we are squarely faced with the argument—repeatedly urged in the past and repeatedly rejected—that the rule of governmental immunity should be abrogated. The doctrine has long been attacked as unsound, unconscionable, and unworthy of a system of government dedicated to protecting the rights of its citizens. One by one, states have defected from its banner to join jurisdictions aligning themselves on the side of governmental responsibility rather than governmental immunity. It is nevertheless true a number of courts still adhere to the general rule of state immunity from suit in contract cases, and until now this court has been one of them.

However, our allegiance has not come easily. It has been marked by sharp disagreement among the members of the court,

both past and present. Boyer v. Iowa High School Athletic Association, 256 Iowa 337, 127 N.W.2d 606 (1964) maintained the doctrine as to tort liability by a narrow five-to-four margin. (Tort liability, of course, was later legislatively treated in chapters 25A and 613A, The Code.) Megee v. Barnes, supra, was adopted in 1968 by a six-to-three margin, with one of the concurring judges expressing dissatisfaction with the principle and agreeing with the result only because of his conclusion relief could come only from the legislature.

Today's decision forsakes that rationale and adopts the rule espoused by many jurisdictions and most graphically described by the Supreme Court of Washington when abrogating its charitable immunity rule in 1953, "We closed our courtroom doors without legislative help, we can likewise open them." Pierce v. Yakima Valley Memorial Hospital Assn., 43 Wash.2d 162, 260 P.2d 765, 774.

As an examination of the authorities hereafter cited will disclose, sometimes the reasons expressed by such courts have been constitutional, either due process or the taking of property without just compensation; sometimes consent to suit has been found in a statute specifically authorizing the contract in question; and sometimes such consent has been assumed simply from the action of the state in voluntarily entering into a contractual relationship.

For reasons we elaborate on later, we say the State has waived its right to assert governmental immunity as a defense to plaintiff's claim; or, to put it another way, the State has impliedly consented to this suit.

We should point out we are not now concerned with the merits of the controversy nor with the authority of the department to enter into the lease for the State. Those matters can be fought out at trial. We decide only that plaintiff is not shut off from that opportunity because its contract is with the State.

While the real defendant is the State, its obligation depends upon the actions of the Department of Social Services. We quickly discuss the authority of this state agency.

The Department of Social Services was established by chapter 209, Laws of the Sixty-second General Assembly, Regular Session (1967). The statutes relating to the department are carried as chapters 217 and 218 in The Code. Its authority is broad and its operations diverse and far flung. According to the preamble, the act was passed for the purpose of "combining the present functions of board of social [service], department of social welfare, board of parole, board of control of state institutions and other state agencies and divisions."

Among other duties, it has jurisdiction over 16 designated state institutions in addition to "camps" and "other facilities * * * as program developments require." Section 218.1, The Code.

Its appropriated funds for each year of the biennium ending June 30, 1971, amounted to more than $78,000,000. Chapter 57, Laws of the Sixty-third General Assembly, First Session (1969). For the present biennium the appropriation for each year is approximately $100,000,000. Chapter 65, Laws of the Sixty-fourth General Assembly, First Session (1971).

The appropriations are for "all purposes" of the department "including public assistance, salaries, support, maintenance, repairs, replacement, alterations, equipment, and miscellaneous purposes for the department's general administration, bureau offices, institutions, welfare services and parole services."

An examination of the responsibilities with which the department is burdened under chapters 217 and 218, The Code, and a review of the purposes of the appropriations as set out above demonstrate to a certainty the department cannot function without countless day-to-day contractual

dealings. Of course, the State expects the other contracting parties to honor these obligations. It can—and does—seek redress when they fail to do so.

Just as certainly *they* expect faithful performance by the State; but they have been left without adequate recourse when these expectations are unfulfilled. We do not consider a request for legislative allowance to be a satisfactory remedy for breach of a còntractual duty. We agree with those courts which say the State, by entering into a contract, agrees to be answerable for its breach and waives its immunity from suit to that extent. To hold otherwise, these courts say, is to ascribe bad faith and shoddy dealing to the sovereign. They are unwilling to do so; and we are too.

Among the cases supporting this view are George and Lynch, Inc. v. State, 197 A.2d 734, 736 (Del.1964); Na-Ja Construction Corp. v. Roberts, 259 F.Supp. 895, 896 (D.C.Del.1966); Todd v. Board of Education, 154 Neb. 606, 48 N.W.2d 706, 710 (1951); P. T. & L. Construction Company v. Commissioner of Department of Transportation, 60 N.J. 308, 288 A.2d 574, 575, 578 (1972); Grant Construction Company v. Burns, 92 Idaho 408, 443 P.2d 1005, 1009, 1010 (1968); Carr v. State, 127 Ind. 204, 26 N.E. 778, 779 (1891); Regents of University System of Georgia v. Blanton (1934), 49 Ga.App. 602, 176 S.E. 673, 675; Ace Flying Service, Inc. v. Colorado Department of Agriculture, 136 Colo. 19, 314 P.2d 278, 279–281 (1957); V. S. DiCarlo Construction Company, Inc. v. State (Mo. 1972), 485 S.W.2d 52, 54.

The principle has been expressed in different ways, and we set out a few excerpts from opinions of other courts to illustrate the basis for our decision.

In George and Lynch, Inc. v. State, supra, we find this statement:

"It follows, therefore, that in authorizing the State Highway Department to enter into valid contracts the General Assembly has necessarily waived the State's immunity to suit for breach by the State of that contract.

"Any other conclusion would ascribe to the General Assembly an intent to profit the State at the expense of its citizens. We are unwilling to assume that the General Assembly intended the State to mislead its citizens into expending large sums to carry out their obligation to the State and, at the same time, deny to them the right to hold the State accountable for its breach of its obligations. To state the proposition is to demonstrate its injustice; indeed, so unjust is it that it might amount to the taking of property without due process of law. * * *"

The Colorado Supreme Court in Ace Flying Service v. Colorado Department of Agriculture, supra, said this:

"Once entered into [contracts by the state] are binding upon the state as well as upon the other contracting party. To hold that the state may enter into a contract by which the other party is compelled to expend large sums in acquiring material, machinery and personnel to enable it to perform its obligation, and then arbitrarily repudiate the contract relegating the injured party to the doubtful remedy of appealing to the legislature for justice in the form of a bill for relief, would be to sanction the highest type of governmental tyranny."

Perhaps one of the best, as well as one of the earliest, statements of the rule is found in Carr v. State, supra, in which the Indiana Supreme Court made this observation:

"In entering into the contract [the State] laid aside its attributes as a sovereign, and bound itself substantially as one of its citizens does when he enters into a contract. Its contracts are interpreted as the contracts of individuals are, and the law which measures individual rights and responsibilities measures, with few exceptions, those of a state

whenever it enters into an ordinary business contract. * * * It cannot be true that a state is bound by a contract, and yet be true that it has power to cast off its obligation and break its faith, since that would invoke the manifest contradiction that a state is bound and yet not bound by its obligation. * * *"

Just recently Missouri took the path we follow today. In the 1972 case of V. S. DiCarlo Construction Company, Inc. v. State, supra, the Supreme Court of that state had this to say:

"Can it properly be said that by this [legislative approval of a construction contract] the General Assembly consented that the State should be bound by the terms of the construction contract and that it might be sued for any breach thereof? We answer these questions in the affirmative. * * * [Our decision] is based on the conclusion that when the State enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses and binds itself to performance, just as any private citizen would do by so contracting."

Other authorities may be found in the dissenting opinions in both Boyer v. Iowa High School Athletic Association. supra, (although a tort case), and Megee v. Barnes, supra. For a general discussion of the problem see "The Sovereign Immunity of the States: The Doctrine and Some of Its Recent Developments," 40 Minn.Law Review 234 (1955).

■ Much of the State's argument urges us to decide this dispute on stare decisis. What we have already said probably disposes of that argument. We have not been reluctant in the past to overrule prior decisions when we conclude they are wrong. Stare decisis is a valuable legal doctrine which lends stability to the law, but it should not be invoked to maintain a clearly erroneous result simply because that's the way it has been in the past.

Certainly we should be as willing to correct our own mistakes as we are those of others. State v. Brustkern, 170 N.W.2d 389, 393, 394 (Iowa 1969); State v. Johnson, 257 Iowa 1052, 1056, 135 N.W.2d 518, 521 (1965); Stuart v. Pilgrim, 247 Iowa 709, 714, 720, 74 N.W.2d 212, 216, 219 (1956); State v Machovec, 236 Iowa 377, 382, 383, 17 N.W.2d 843, 846 (1945); Montanick v. McMillin, 225 Iowa 442, 459, 280 N.W. 608, 616 (1938).

One other matter should be mentioned. The State argues the trial court preempted the function of this court by overruling Megee v. Barnes, supra. It is not clear if the State wants us to reverse on that ground; but if so, the premise is clearly wrong.

Without retreating from what we rather testily said in State v. Eichler, 248 Iowa 1267, 1270, 83 N.W.2d 576, 578 (1957), ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.") or from the statement in the dissent in Boyer v. Iowa High School Athletic Association, 256 Iowa 337, 358, 127 N.W.2d 606, 618 (1964), ("* * * the able trial court * * * was duty bound to follow precedent."), that is not a persuasive argument for continuing a rule we have now decided is unsound and should be abandoned.

If trial courts venture into the business of predicting when this court will reverse its previous holdings—an exercise which has long exasperated the lawyers of this state—they are engaged in a high-risk adventure which we strongly recommend against. However, when their judgment proves prophetic, we should not refuse to affirm simply to demonstrate our final authority.

Perhaps we should temper the above by this statement from the dissenting opinion of Judge Learned Hand in Spector Motor Service, Inc. v. Walsh, 2 Cir., 1943, 139 F. 2d 809, 823:

"It is always embarrassing for a lower court to say whether the time has come

to disregard decisions of a higher court, not yet explicitly overruled, because they parallel others in which the higher court has expressed a contrary view. I agree one should not wait for formal retraction in the face of changes plainly foreshadowed. * * * Nor is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant; on the contrary I conceive that the measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before it."

■ In conclusion we now overrule Megee v. Barnes, supra, and hold the State, by entering into a contract, waives its defense of governmental immunity and consents to be sued for breach thereof.

The ruling of the trial court is affirmed.

Affirmed.

MOORE, C. J., and MASON, REES and HARRIS, JJ., concur.

RAWLINGS and UHLENHOPP, JJ., dissent.

REYNOLDSON and McCORMICK, JJ., take no part.

RAWLINGS, Justice (dissenting).

I respectfully dissent.

In order to reach a desired and probably desirable result the majority, albeit in good faith, employs what can only be described as an existentialistic approach.

I. Initially it, in effect, ignores these apt observations in Cover v. Craemer, 258 Iowa 29, 34–35, 137 N.W.2d 595, 599 (1965):

"[Volume] 21 C.J.S. Courts § 187, says: 'Under the stare decisis rule, a principle of law which has become set-

tled by a series of decisions generally is binding on the courts and should be followed in similar cases. * * *.'

"In § 214 it is said: 'This rule is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed, the power to change the law as interpreted being regarded, in such circumstances as one to be exercised solely by the legislature.'

"Goodman v. Henry L. Doherty & Co., 218 Iowa 529, 531, 255 N.W. 667, 668, states: 'Precedents are the stepping stones of the law in its goings. Once placed, they should not be lightly displaced. Such, broadly, is the reason why an appellate court consents to the overruling of a prior decision only in a very exceptional case.'"

The majority also disregards other established principles regarding statutory construction. In this regard it stands without question that if the General Assembly, in enacting our Iowa Tort Claims Act in 1965 (The Code 1973, Chapter 25A), had intended to abolish state immunity in the field of contracts it could easily have so declared. This it did not do and it is not for us to so extend chapter 25A that it be made applicable to contractual controversies. See generally Iowa R.Civ.P. 344(f)(13); Read v. Estate of Mincks, 176 N.W.2d 192, 194 (Iowa 1970); Graham v. Worthington, 259 Iowa 845, 855, 867–870, 146 N.W.2d 626 (1966). See also State v. Flack, 251 Iowa 529, 533–534, 101 N.W.2d 535 (1960).

Furthermore it would appear the majority, in part, inferentially predicates its stand upon absence of mutuality of remedy, at best a relatively ethereal premise. See generally 5A Corbin on Contracts, §§ 1178–1182. See also Code chapter 25.

In any event it is impossible for me to now join in overruling Megee v. Barnes, 160 N.W.2d 815 (Iowa 1968), merely upon

the basis of a personal desire. Although I favor the result reached by the majority it still remains the subject at hand is a matter of public policy resting exclusively with the legislative branch of government. See 49 Am.Jur., States, Territories, and Dependencies, §§ 73, 91; 81 C.J.S. States §§ 213-215.

In light of the foregoing it is evident the majority engages in nothing less than impermissible judicial legislation. See Iowa Const., art. III (Departments of Government), § 1; Frost v. State, 172 N.W.2d 575, 584 (Iowa 1969); 16 Am.Jur.2d, Constitutional Law, §§ 222, 225, 227, 20 Am. Jur.2d, Courts, §§ 64-65; 16 C.J.S. Constitutional Law § 151(1); 82 C.J.S. Statutes § 9.

So until the General Assembly speaks on the subject I adhere to this rationale in Megee v. Barnes, 160 N.W.2d at 816-817:

"We have held many times the state is not subject to suit without its consent. The immunity is from suit, not from liability.

"Rule 9 of the Rules of Civil Procedure, reported by us to the legislature in January, 1943, effective July 4, 1943, gives recognition to the rule just stated in this language: 'The state may sue in the same way as an individual. * * * It may be sued as provided by any statutes in force at the time.' No statute has been cited or come to our attention which provides the state may be sued in such an action as this.

"The legislature must be held to have known the language of Rule 9 and to have approved it. We have repeatedly held these rules have the force and effect of statutes. Krebs v. Town of Manson, 256 Iowa 957, 960, 129 N.W.2d 744, 746 and citations; Kutrules v. Suchomel, 258 Iowa 1206, 1211, 141 N.W.2d 593, 596 and citations.

"The legislature has given the consent of the state, upon the conditions provided in section 613.8 Code 1966 for its protection, that it be made a party to any action involving (1) the title to real estate, (2) partition thereof, (3) foreclosure of liens or mortgages against real estate or (4) the determination of priorities of liens or claims against real estate, for the purpose of obtaining an adjudication as to any such mortgage or other lien or claim. (Section 613.8).

"Section 613.12 provides the state waives immunity from suit and consents to the jurisdiction of any court in which an action is brought against the state highway commission respecting any claim, right or controversy arising out of the work performed or by virtue of the provisions of any construction contract entered into by the commission.

"It is at once apparent the present action is not of the kind in which the state has waived its immunity from suit in either 613.8 or 613.12. It is also apparent that if the state enjoyed no such immunity both these statutes were wholly unnecessary."

It is also appropriate to here note, a breach of contract claimant is not today without remedy. Code sections 25.1, 25.2, 25.3 provide for filing and processing of claims on which the state would be liable except for its sovereignty. Significantly, in case any such claim be rejected by the state appeal board, it is finally for the two legislative houses to act on the matter.

II. Moreover, the majority creates but leaves unanswered some truly troublesome problems, both procedural and substantive.

In the first place no means has been or could be judicially provided by which claims for breach of contract may be filed with or officially acted upon by any officer, board, commission, or agent of the state.

Demonstrably, with regard to tort claims, § 25A.3 provides:

"Authority is hereby conferred upon the state appeal board, acting on behalf

of the state of Iowa, subject to the advice and approval of the attorney general, to consider, ascertain, adjust, compromise, settle, determine, and allow any claim as defined in this chapter. If any claim is compromised, settled, or allowed in an amount of more than five thousand dollars, the unanimous approval of all members of the state appeal board and the attorney general shall be required and the approval of the district court of the state of Iowa for Polk county shall also be required.

"Claims made under this chapter shall be filed with the state comptroller, who shall acknowledge receipt on behalf of the state appeal board.

"The state appeal board may adopt rules, regulations, and procedures for the handling, processing, and investigation of claims."

Then § 25A.4 says:

"The district court of the state of Iowa for the district in which the plaintiff is resident or in which the act or omission complained of occurred, or where the act or omission occurred outside of Iowa and the plaintiff is a nonresident, the Polk county district court, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any suit or claim as defined in this chapter. However, the laws and rules of civil procedure of this state on change of place of trial shall apply to such suits.

"The state shall be liable in respect to such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the state shall not be liable for interest prior to judgment or for punitive damages. Costs shall be allowed in all courts to the successful claimant to the same extent as if the state were a private litigant.

"The immunity of the state from suit and liability is waived to the extent provided in this chapter.

"A suit is commenced under this chapter by serving the attorney general or his duly authorized delegate in charge of the tort claims division by service of an original notice. The state shall have thirty days within which to enter its general or special appearance."

And § 25A.5 states:

"No suit shall be permitted under this chapter unless the state appeal board has made final disposition of the claim; except that if the state appeal board does not make final disposition of a claim within six months after the claim is made in writing to the state appeal board, the claimant may, by notice in writing, withdraw the claim from consideration of the state appeal board and begin suit under this chapter. Disposition of or offer to settle any claim made under this chapter shall not be competent evidence of liability or amount of damages in any suit under this chapter."

It may, of course, be argued our court house doors are always open to litigants. But the majority seemingly finds pre-litigation arbitration is of little or no consequence regarding breach of contract controversies. I deem it highly important, as did the General Assembly in enacting Code chapter 25A.

III. Assuming, arguendo, the matter of pre-litigation arbitration is of no great moment, it still remains there can be no "settlement by agreement" even after legal action has been instituted.

Again by way of illustration Code § 25A.9 authorizes the attorney general to compromise or settle, with court approval, any tort action commenced against the sovereignty.

Finally, in this regard, it is for the General Assembly alone to enact laws govern-

ing the expenditure of state funds including appropriations for payment of money. See Iowa Const., art. VII, §§ 2, 5; Graham v. Worthington, 259 Iowa at 857–861, 146 N.W.2d at 634–637.

Here, however, there has been no appropriation for payment of contract breach damages, and neither the attorney general nor courts can bind the state to pay same either by agreement, judicial fiat or judgment, in the absence of specific valid statutory authority. See 49 Am.Jur., States, Territories, and Dependencies, § 104; 81 C.J.S. States §§ 231–232. See also Code § 25A.11.

This means any breach of contract monetary judgment entered against the state is relatively meaningless. In any event it will remain for the legislature to act before ultimate redress can be had. Compare Code chapter 25.

Consequently, the grant of any such judgment to a litigant as against the state, absent appropriate legislative action, may be an illusory and empty victory to a suing party. Thus the majority, by indulging in judicial legislation, also engages in what could conceivably be an exercise in futility.

I would reverse.

UHLENHOPP, Justice (dissenting).

I would prefer to concur in the more equitable result reached by the court, but am constrained to join in Judge Rawlings' dissenting opinion insofar as he bases his conclusion on rule 9 of the Rules of Civil Procedure. I believe that the court has boxed itself in by that rule.

I. Sovereign immunity is a creature of judicial decision and should be abrogated by judicial decision where possible. But in 1943 the court proposed rule 9 to the General Assembly (50 G.A. ch. 278 at p. 288):

> The state may sue in the same way as an individual. No security shall be required of it. *It may be sued as provided by any statutes in force at the time.* (Italics added.)

The General Assembly did not disapprove the proposed rule and it became law with the force of a statute. Kutrules v. Suchomel, 258 Iowa 1206, 141 N.W.2d 593.

Now we are dissatisfied with the italicized portion of rule 9 and want the state to be suable in contract the same as an individual. It seems to me that we must respect the rule the same as a statute and that we cannot simply turn our backs on it. Instead, if the legislature itself does not act we should reformulate rule 9 and submit the reformulation to the legislature in the regular way under § 684.19 of the Code.

II. I am unable to say rule 9 deals only with the *manner* in which the state can be sued, rather than with its *suability*. That is not the view of the rule held by the principal framer of the rules. 1 Cook, Iowa Rules of Civil Procedure (Rev.Ed.) Rule 9, Author's Comment ("This rule is new, but merely re-states the prior law. The state can be sued only with its consent."). The plain meaning of rule 9 appears to be that the state may be sued as provided by statute. Here, unfortunately, we have no statute.

The judgment should be reversed.