# IN THE SUPREME COURT OF IOWA

No. 10–1088

Filed August 5, 2011

**IN THE MATTER OF THE ESTATE
OF JOHNNY VAJGRT,** Deceased,

**BILL ERNST, INC.,**

     Intervenor-Appellant.

---

Appeal from the Iowa District Court for Marshall County, Michael J. Moon, Judge.

Bill Ernst, Inc. appeals a district court ruling denying its claim for punitive damages. **AFFIRMED.**

Theodore R. Hoglan of Condon & Hoglan Law Firm, Marshalltown, for appellant.

Melissa A. Nine and Barry S. Kaplan of Kaplan, Frese & Nine, LLP, Marshalltown, for appellee.

**MANSFIELD, Justice**.

The sole question presented by this appeal is whether a right to punitive damages survives the death of the wrongdoer. On several previous occasions, we have held that punitive damages may not be recovered from the estate of a deceased tortfeasor. *See Rowen v. Le Mars Mut. Ins. Co.*, 282 N.W.2d 639, 661 (Iowa 1979); *Wolder v. Rahm*, 249 N.W.2d 630, 632 (Iowa 1977); *Stevenson v. Stoufer*, 237 Iowa 513, 517, 21 N.W.2d 287, 288 (1946); *Sheik v. Hobson*, 64 Iowa 146, 147–48, 19 N.W. 875, 875–76 (1884). Upon our review, we are not persuaded that we should reconsider these precedents. Therefore, we affirm the judgment below.

## I. Background Facts and Proceedings.

Bill Ernst, Inc. owns a thirty-three-acre tract of land north of Marshalltown. The Ernst property is bordered by Highway 14 to the west, property owned by Johnny Vajgrt to the north, city-owned property to the east, and the Iowa River to the south. Burnett Creek meanders in a generally southerly direction to the Iowa River, at times through the eastern portion of the Ernst property and at times through the western edge of the property owned by Marshalltown. The Ernst property is an undeveloped, largely wooded area located in a floodplain that floods annually. Ernst uses the land for recreational purposes.

Burnett Creek also flows southerly through Vajgrt's property before it reaches the Ernst property. In the fall of 2005, Vajgrt became concerned that a fallen tree near the confluence of Burnett Creek and the Iowa River would create a dam and cause water to back up onto his land. Therefore, Vajgrt sought permission to enter onto Ernst's land to remove the tree. Bill Ernst initially refused Vajgrt's request, but after the City of Marshalltown agreed that Vajgrt could access its land to remove the tree,

and Vajgrt explained to Ernst that it would be more convenient to go through Ernst's property, Ernst gave Vajgrt permission to come onto his property to remove the fallen tree.

Ernst then left on a hunting trip to Colorado. During that time, Vajgrt went onto Ernst's property with another individual. Instead of just removing the fallen tree, however, Vajgrt and the other person used their equipment to tear out approximately forty live trees that were on Ernst's property along Burnett Creek.

When Ernst returned from his trip, he was angry to have found that Vajgrt had uprooted numerous trees, instead of just removing the single tree for which he had been given permission. Ernst did not pursue a legal claim at that time, however.

Vajgrt passed away on November 4, 2008. On April 23, 2009, Ernst filed a claim in probate seeking compensatory damages for the diminution to the value of his property, the value of the trees, and the expense of restoration, as well as punitive damages.[1]

Following a contested hearing, the district court awarded Ernst $57.50 per tree removed from Ernst's property for a total of $2300, but declined to award any punitive damages, stating, "[I]t is well-settled in Iowa that while a tort action survives the death of the tortfeasor, punitive damages cannot be awarded against the administrator of the tortfeasor's estate." Ernst appeals, raising only the legal issue whether a claim for punitive damages should abate upon the death of a tortfeasor.

---

[1]Ernst did not assert the statutory claim for treble damages that is available when a person "willfully injur[es] any timber, tree, or shrub on the land of another." Iowa Code § 658.4 (2009); *see also Johnson v. Tyler*, 277 N.W.2d 617, 618–19 (Iowa 1979) (holding a plaintiff cannot recover both treble damages under section 658.4 and punitive damages under the common law). We assume Ernst did not bring such a claim because the statute of limitations for actions seeking a statutory penalty had expired. *See* Iowa Code § 614.1(2) (two-year statute of limitations applies to actions "for a statute penalty").

## II.  Standard of Review.

Whether a claim for punitive damages survives the death of a tortfeasor and may be pursued against the tortfeasor's estate is a legal question.  Therefore, our review is for the correction of errors at law. Iowa R. App. P. 6.907; *Bremer v. Wallace*, 728 N.W.2d 803, 804 (Iowa 2007).

## III.  Analysis.

The long-standing rule in this state bars the recovery of punitive damages when the tortfeasor dies before judgment.  In *Sheik*, decided when Iowa had been a state for less than forty years, we first announced this rule.  64 Iowa at 147–48, 19 N.W. at 875–76.  *Sheik* involved a suit for slander.  Allegedly, the defendant stated falsely in the presence of the plaintiff's husband that he had had sexual intercourse with the plaintiff. *Id.* at 146, 19 N.W. at 875.  The defendant died during the pendency of the case, however, and the district court declined to instruct the jury on punitive damages against his estate.  *Id.* at 146–47, 19 N.W. at 875.  The plaintiff appealed, and we affirmed, explaining:

> Such damages are awarded as a punishment of the man who has wickedly or wantonly violated the rights of another, rather than for the compensation of the one who suffers from his wrongful act.  It is true, they are awarded to the one who has been made to suffer; but not as a matter of right.  For, while he is entitled under the law to such sum as will fully compensate him for the injury sustained, the question whether punitory damages shall be assessed, and the amount of the assessment, is left to the discretion of the jury.
>
> Plaintiff had a right of action, on account of the slanderous words spoken by [the defendant], for such sum as would compensate her for the injury.  This was her cause of action, and this is what was preserved to her by the statute at his death.  But she had no personal interest in the question of his punishment.  So far as he was concerned, the punitory power of the law ceased when he died.  To allow exemplary damages now would be to punish his legal and

personal representatives for his wrongful act, but the civil law never inflicts vicarious punishment.

*Id.* at 147–48, 19 N.W. at 875–76. In short, *Sheik* emphasized that, because the role of punitive damages is punitive, rather than compensatory, such damages should not be awarded when the person to be punished has died.

This holding was subsequently reiterated in *Stevenson*, 237 Iowa at 517, 21 N.W.2d at 288 ("[T]he right to such damages did not survive the death of the wrongdoer either at common law or under our survivorship statute[.]"), *Wolder*, 249 N.W.2d at 632 ("[A] right to punitive damages does not survive the wrongdoer's death[.]"), and *Rowen*, 282 N.W.2d at 661 ("[S]uch an award is not made against one deceased[.]").

Ernst argues that this line of authority is now obsolete and should be overruled. Ernst relies on Iowa's current survival statute as set forth in Iowa Code section 611.20 (2009), Iowa's punitive damages statute as set forth in Iowa Code chapter 668A, and our own recognition in various cases that punitive damages not only punish the tortfeasor, but also deter others from like conduct. For the reasons stated herein, we find none of these arguments persuasive.

**A. Iowa Code Section 611.20.** According to Iowa's survival statute, "[a]ll causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Iowa Code § 611.20. Ernst argues that this provision "would logically lean toward the allowance of [punitive] damages" even after the death of the tortfeasor.

However, one potential problem with Ernst's position is that punitive damages do not constitute a distinct "cause of action." Rather, they are a form of relief incidental to the main cause of action. *Sebastian*

*v. Wood*, 246 Iowa 94, 100, 66 N.W.2d 841, 844 (1954). Furthermore, Iowa had a similar survival statute in effect in 1884 when *Sheik* was decided. 64 Iowa at 147, 19 N.W. at 875 (citing Iowa Code section 2525 (1873), which provided that all causes of action "may be brought, notwithstanding the death of the person entitled or liable to the same"). We specifically rejected the same proposed construction of the survival statute back then, *id.*, and the legislature has reenacted the survival statute in various forms without attempting to disturb our holding in *Sheik*.

"The legislature is presumed to know the state of the law, including case law, at the time it enacts a statute." *State v. Jones*, 298 N.W.2d 296, 298 (Iowa 1980). "[W]e often infer legislative assent to our precedents from prolonged legislative silence." *McElroy v. State*, 703 N.W.2d 385, 395 (Iowa 2005). The rule of stare decisis

> "is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed, the power to change the law as interpreted being regarded, in such circumstances, as one to be exercised solely by the legislature."

*Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 574 (Iowa 2002) (quoting *Cover v. Craemer*, 258 Iowa 29, 34–35, 137 N.W.2d 595, 599 (1965)).

In short, reliance on the survival statute did not carry the day when *Sheik* was decided. If anything, the argument has less force today, given the legislature's repeated reenactment of the survival statute without attempting to disturb the holding in *Sheik*.

**B. Iowa Code Chapter 668A.** In 1986, the general assembly enacted a law relating to punitive or exemplary damages. *See* 1986 Iowa

Acts ch. 1211, § 42 (codified at Iowa Code ch. 668A (1987)). Under the statute, as revised in 1987, *see* 1987 Iowa Acts ch. 157, § 10, a plaintiff may recover punitive or exemplary damages if the plaintiff proves "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(*a*), (2) (2009). If the plaintiff also shows that the defendant's conduct was "directed specifically" at the plaintiff, then the plaintiff shall be paid the full amount of the punitive or exemplary damages awarded. *Id.* § 668A.1(1)(*b*), (2)(*a*). However, if the defendant's conduct was not directed specifically at the plaintiff, the plaintiff may only receive up to twenty-five percent of the punitive or exemplary damages awarded, with the remainder being paid into a civil reparations trust fund to help pay for indigent civil litigation programs or insurance assistance programs. *Id.* § 668A.1(1)(*b*), (2)(*b*).

But chapter 668A is silent on whether punitive damages survive a tortfeasor's death. Therefore, it is difficult to make the case that the legislature intended to overturn the existing precedents in this area. *Jones*, 298 N.W.2d at 298. Our court had just reiterated the rule that punitive damages do not survive the tortfeasor's death in 1977 and again in 1979. It seems more plausible to conclude the legislature did not intend to change this recent case law when it enacted wide-ranging legislation on the subject of punitive damages in 1986 without addressing the recoverability of punitive damages from estates. We are not persuaded that the enactment of chapter 668A should lead us to reconsider our long-standing precedents.

**C. The Policies Behind Punitive Damages.** We have said that punitive or exemplary damages serve three purposes: (1) punishment,

(2) specific deterrence, and (3) general deterrence. *Sebastian*, 246 Iowa at 100, 66 N.W.2d at 844 (Punitive damages serve "as a punishment for the particular party involved and as a warning and an example to him in the future, and to all others who may offend in like manner. The award of such damages constitutes an effective deterrent to such offenders, and a salutary protection to society and the public in general."); *see also McClure v. Walgreens Co.*, 613 N.W.2d 225, 230 (Iowa 2000) ("Punitive damages serve 'as a form of punishment and to deter others from conduct which is sufficiently egregious to call for the remedy.'" (quoting *Coster v. Crookham*, 468 N.W.2d 802, 810 (Iowa 1991))).

Citing this case law, Ernst argues that the general deterrence role of punitive damages would be advanced by allowing recovery of such damages from a tortfeasor's estate. As Ernst puts it, "*Sheik* was decided in a day when the only purpose of exemplary damages was that of punishment. The additional purpose of exemplary damages presently is to discourage/deter others from like conduct in the future."

We agree with Ernst that *Sheik* did not address this potential goal of punitive damages. It simply contrasted the compensatory function of actual damages with the "punitory" function of punitive damages. Yet by the time *Rowen* was decided in 1979, we were making it clear that "punitive damages serve two main purposes[:] to punish and to deter." 282 N.W.2d at 662; *see also id.* at 661 ("[T]hey are allowed as both a punishment to the wrongdoer and a deterrent to others[.]"). Even so, in *Rowen*, we again reiterated the *Sheik* holding that punitive damages abate upon the death of the tortfeasor. *Id.* at 661. Thus, regardless of any possible broadening of the potential goals served by punitive damage awards, we have previously adhered to the rule that punitive damages should not be awarded against the estate of a wrongdoer. We therefore

do not believe that Ernst's policy arguments warrant a reconsideration of our precedents.

Notably, Iowa follows the same approach with respect to criminal prosecutions. It has long been the law in this state that a criminal prosecution abates upon the death of the defendant. *See Maghee v. State*, 773 N.W.2d 228, 231 n.2 (Iowa 2009) (citing authorities). Even though criminal fines may have a general deterrence effect on other wrongdoers, the state may not continue a criminal proceeding after the defendant dies to recover a fine from his or her estate. *See State v. Kriechbaum*, 219 Iowa 457, 458–61, 258 N.W. 110, 110–12 (1934) (holding that when a defendant dies while his conviction is on appeal, the action abates in toto and ab initio, and the costs of prosecution cannot be assessed against the defendant's estate); *Babbitt v. Corrigan*, 157 Iowa 382, 383, 138 N.W. 466, 467 (1912) (stating that, in the criminal context, "[p]unishment cannot be imposed upon a dead man, nor can penalties be imposed as against his estate"); *cf. Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19, 111 S. Ct. 1032, 1044, 113 L. Ed. 2d 1, 20 (1991) (noting that punitive damages have been described as quasi-criminal).

Also, Iowa's rule in this area is not unique. Most other jurisdictions disallow punitive damage recoveries after the wrongdoer has died.[2] At present, approximately thirty-one jurisdictions in addition to Iowa follow this approach.[3] Most of these jurisdictions (like Iowa) do so

---

[2]*See* Jay M. Zitter, Annotation, *Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged*, 30 A.L.R.4th 707, 712–13 (1984); Timothy R. Robicheaux & Brian H. Bornstein, *Punished, Dead or Alive: Empirical Perspectives on Awarding Punitive Damages Against Deceased Defendants*, 16 Psychol. Pub. Pol'y & L. 393, 413 (2010) ("The majority of jurisdictions that have considered the issues have barred punitive damages against deceased defendants, but courts usually must interpret civil statutes that are silent on the issue.").

[3]The following jurisdictions currently adhere to the majority approach: Idaho Code Ann. § 5–327(1) (West, Westlaw through 2011 Chs. 1–335); Vt. Stat. Ann. tit. 14, §

because of appellate court rulings, rather than legislative enactments expressly prohibiting punitive damage recoveries.[4]  In fact, in a number of jurisdictions that follow the majority rule, there are general survival

---

1454 (West, Westlaw through 2011 Sess. No. 28); *Fehrenbacher v. Quackenbush*, 759 F. Supp. 1516, 1521–22 (D. Kan. 1991) (applying Kansas law); *Sanchez v. Marquez*, 457 F. Supp. 359, 364 (D. Colo. 1978) (applying Colorado law) (currently codified at Colo. Rev. Stat. Ann. § 13–20–101(1) (West, Westlaw through July 1, 2011)); *Doe v. Colligan*, 753 P.2d 144, 146 (Alaska 1988); *Evans v. Gibson*, 31 P.2d 389, 395 (Cal. 1934) (subsequently codified at Cal. Civ. Proc. Code § 377.42 (1992)); *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938–40 (D.C. 1995); *Lohr v. Byrd*, 522 So. 2d 845, 846–47 (Fla. 1988); *Morris v. Duncan*, 54 S.E. 1045, 1046–47 (Ga. 1906) (subsequently codified at Ga. Code Ann. § 9–2–41 (West, Westlaw through 2011 Reg. Sess.)); *Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 138–40 (Ind. 2005); *Stewart v. Estate of Cooper*, 102 S.W.3d 913, 915–16 (Ky. 2003); *Edwards v. Ricks*, 30 La. Ann. 926, 928 (1878); *Prescott v. Knowles*, 62 Me. 277, 279 (1874) (currently codified at Me. Rev. Stat. Ann. tit. 18–A, § 3–818 (West, Westlaw through 2011 1st Reg. Sess.)); *Wilkens v. Wainwright*, 53 N.E. 397, 397–98 (Mass. 1899) (currently codified at Mass. Gen. Laws Ann. ch. 230, § 2 (West, Westlaw through 2011 1st Annual Sess. Ch. 67)); *Thompson v. Estate of Petroff*, 319 N.W.2d 400, 408 (Minn. 1982); *Hewellette v. George*, 9 So. 885, 887 (Miss. 1891) (subsequently codified at Miss. Code Ann. § 91–7–235 (West, Westlaw through 2011 legislative sessions), *overruled on other grounds by Glaskow ex rel. Denton v. Glaskow*, 614 So. 2d 906, 907 (Miss. 1992); *Tietjens v. Gen. Motors Corp.*, 418 S.W.2d 75, 88 (Mo. 1967); *Allen v. Anderson*, 562 P.2d 487, 489–90 (Nev. 1977) (subsequently codified at Nev. Rev. Stat. Ann. § 41.100(2) (West, Westlaw through 2010 Special Sess.)); *Jaramillo v. Providence Wash. Ins. Co.*, 871 P.2d 1343, 1350–52 (N.M. 1994); *Gordon v. Nathan*, 352 N.Y.S.2d 464, 465 (App. Div. 1974) (currently codified at N.Y. Est. Powers & Trusts Law § 11–3.2(a)(1) (McKinney, Westlaw through 2011 Sess.)); *Harrell v. Bowen*, 635 S.E.2d 498, 500 (N.C. Ct. App. 2006); *Mongold v. Estate of Gilbert*, 758 N.E.2d 1245, 1247–49 (Ohio Ct. C.P. 2000); *Morriss v. Barton*, 190 P.2d 451, 459–60 (Okla. 1947); *Ashcraft v. Saunders*, 444 P.2d 924, 926–27 (Or. 1968) (currently codified at Or. Rev. Stat. Ann. § 30.080 (West, Westlaw through 2011 emergency session)); *Aldrich v. Howard*, 8 R.I. 125, 127 (1864) (currently codified at R.I. Gen. Laws Ann. § 9–1–8 (West, Westlaw through Jan. 2010 Sess. Ch. 321)); *Olson-Roti v. Kilcoin*, 653 N.W.2d 254, 260–62 (S.D. 2002); *Hayes v. Gill*, 390 S.W.2d 213, 217 (Tenn. 1965); *In re Estate of Garza*, 725 P.2d 1328, 1330 (Utah 1986); *Dalton v. Johnson*, 129 S.E.2d 647, 650–51 (Va. 1963) (subsequently codified at Va. Code Ann. § 8.01–25 (West, Westlaw through 2011 Reg. Sess.)); *McWilliams v. Bragg*, 3 Wis. 424, 431 (1854) (currently codified at Wis. Stat. Ann. § 895.02 (West, Westlaw through 2011 Act 31)); *Parker v. Artery*, 889 P.2d 520, 524–25 (Wyo. 1995); *see also* Restatement (Second) of Torts §§ 908 cmt. *a*, 926(b) (1979).

[4]Seventeen of the thirty-one jurisdictions referenced in the previous footnote deny punitive damage awards against tortfeasor estates as a matter of judicial precedent, despite the lack of any statute directly on point.  Furthermore, in a number of the remaining fourteen jurisdictions, the statutes in question were adopted after appellate courts had already ruled that punitive damages were not recoverable after the wrongdoer died.

statutes similar to Iowa Code section 611.20.[5] Nevertheless, their courts found that punitive damage recoveries did not survive the death of the tortfeasor.

The minority view allows recovery of punitive damages even when the wrongdoer has died.[6] But only about eleven jurisdictions have adopted this position. And it would be difficult to argue there is a trend toward it. For example, within the last decade, supreme courts in at least three states have ruled for the first time that punitive damages are *not* recoverable after the tortfeasor's death.[7]

Finally, our case presents another possible reason why it may be appropriate for punitive damage claims to abate upon the death of the tortfeasor. Here, the decedent Vajgrt entered upon Ernst's property and caused the trees to be removed in 2005, but Ernst did not seek judicial redress until 2009, when he filed a claim in probate against Vajgrt's estate. While no one contests the timeliness of the claim, *see* Iowa Code § 614.1(4) (five-year statute of limitations for injuries to property), Vajgrt

---

[5]Alaska Stat. Ann. § 09.55.570 (West, Westlaw through 2010 2nd Reg. Sess.); D.C. Code § 12–101 (West, Westlaw through May 10, 2011); Fla. Stat. Ann. § 46.021 (West, Westlaw through July 1, 2011); Ind. Code Ann. § 34–9–3–1 (West, Westlaw through 2011); Minn. Stat. Ann. § 573.01 (West, Westlaw through 2011 Reg. Sess. Ch. 19).

[6]The following jurisdictions currently follow this rationale: *Ellis v. Zuck*, 546 F.2d 643, 644–45 (5th Cir. 1977) (applying Alabama law); *In re Thomas*, 254 B.R. 879, 887 (D. S.C. 1999) (applying South Carolina law); *Haralson v. Fisher Surveying, Inc.*, 31 P.3d 114, 115 (Ariz. 2001); *Estate of Farrell ex rel. Bennett v. Gordon*, 770 A.2d 517, 521–22 (Del. 2001); *Kaopuiki v. Kealoha*, 87 P.3d 910, 924–28 (Haw. Ct. App. 2003); *Penberthy v. Price*, 666 N.E.2d 352, 354–57 (Ill. App. Ct. 1996); *Tillett v. Lippert*, 909 P.2d 1158, 1161–62 (Mont. 1996); *G.J.D. v. Johnson*, 713 A.2d 1127, 1129–31 (Pa. 1998); *Hofer v. Lavender*, 679 S.W.2d 470, 474–75 (Tex. 1984); *Perry v. Melton*, 299 S.E.2d 8, 11–13 (W. Va. 1982); *see also Munson v. Raudonis*, 387 A.2d 1174, 1177–78 (N.H. 1978) (stating that although New Hampshire law does not allow for punitive damages, compensatory damages survive the death of the tortfeasor and the "compensatory damages awarded may reflect the aggravating circumstances" when wanton, malicious, or oppressive conduct is involved).

[7]*See Crabtree*, 837 N.E.2d at 139; *Stewart*, 102 S.W.3d at 916; *Olson-Roti*, 653 N.W.2d at 260–62.

is no longer available to defend himself and testify why he did not act with "willful and wanton disregard for the rights or safety of another." *Id.* § 668A.1(1)(*a*). In a circumstance in which the actor's state of mind is important, direct evidence of that state of mind is no longer available.

This argument can be pressed too far. Under the rule in *Sheik*, punitive damages may not be recovered if the tortfeasor dies before judgment, even if the tortfeasor had the opportunity to testify on his or her own behalf.

At the same time, we believe this is an area in which *all* the policy arguments can be pressed too far. For example, we doubt that the typical tortfeasor makes a calculation about the possibility of a punitive damage award against his or her estate, should he or she die before judgment. Thus, the marginal deterrence gain from a rule allowing punitive damages to be awarded against decedent's estate seems to us relatively small. All the more reason, therefore, to defer to our established precedents and the legislature's prior decisions not to disturb them.

**IV. Conclusion.**

For the foregoing reasons, we affirm the judgment of the district court, including its refusal to award punitive damages against Vajgrt's estate.

**AFFIRMED.**

All justices concur except Wiggins and Appel, JJ., who concur specially, and Hecht, J., who dissents.

**WIGGINS, Justice (concurring specially).**

I write to concur specially. I agree with the well-reasoned dissent. If we were to develop the common law further in this area, I might overrule our prior precedents for the reasons stated in the dissent and allow the court to award punitive damages awarded against the estate of a deceased tortfeasor. However, when the legislature jumped into the arena of punitive damages in 1986, it left most of our common law rules regarding punitive damages intact. In this instance, the legislature's inaction as to these common law rules tips the scales not to overturn a precedent in existence when the legislature passed Iowa Code chapter 668A (2009). Accordingly, I am unable to join the dissent.

Appel, J., joins this special concurrence.

**HECHT, Justice (dissenting).**

The majority opinion follows the rule adopted by this court in *Sheik v. Hobson.* In that case, decided in 1884, we summarily concluded "the punitory powers of the law ceased when [the tortfeasor] died," and we expressed a disinclination to punish the wrongdoer's heirs for their benefactor's malicious conduct. *Sheik v. Hobson,* 64 Iowa 146, 148, 19 N.W. 875, 875–76 (1884). Although this court has continued to follow the holding announced in *Sheik* since it was decided, I believe the rationale supporting the rule is gravely flawed, and I therefore would reverse and remand.

While acknowledging the importance of the doctrine of stare decisis to the rule of law, this court has not hesitated to renounce flawed common law rules. *Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 121 (Iowa 1973). Our willingness to revisit such rules finds its source in the sensible notion that fealty to stability in the law "should not be invoked to maintain a clearly erroneous result simply because that's the way it has been in the past." *Id.* This principle recognizes the reality that courts sometimes make mistakes and concedes "we should be as willing to correct our own mistakes as we are those of others." *Id.* In my view, this is one of those times.

In rejecting the idea that punitive damages should not be recoverable against a tortfeasor's estate, the Arizona Supreme Court has noted:

> There is no logical reason why courts should allow a punitive award against a defendant who survives a judgment, but deny it where death occurs earlier. Suppose, for example, two individuals commit equally culpable and outrageous acts. One is comatose and, for all practical purposes, has no reasonable chance of recovery. The other

> is dead. Is there a way to explain why the unconscious tortfeasor would have his assets exposed to punitive liability, while the deceased's estate would be immunized from it?

*Haralson v. Fisher Surveying, Inc.*, 31 P.3d 114, 118 (Ariz. 2001). Although courts following the majority rule have offered explanations for the rule immunizing tortfeasors' estates from punitive damage judgments, I find none of them persuasive.

Perhaps the most common explanation—one conclusorily noted by this court shortly after the Civil War—suggests the purpose of punishment cannot be achieved against a deceased tortfeasor. *Sheik,* 64 Iowa at 147–48, 19 N.W. at 875–76. While this proposition has some logical appeal, I believe the law should, for purposes of punishment, view punitive damages as an appropriate means to accomplish a form of retribution against the departed. A tortfeasor's testamentary or intestate transfer of assets can have an impact on the lives of survivors long after the tortfeasor's death. Just as his predeath misconduct can have injurious consequences long after his death, a tortfeasor reaches beyond the grave to effectuate property transfers through his estate. Although the deceased tortfeasor is not physically present to personally experience the retributive effects of any punitive damage judgment against his estate, I believe it is reasonable to view the disruption of his preferred plan of postdeath asset distribution as a form of punishment of the deceased tortfeasor. Accordingly, I believe we were simply wrong when we concluded in *Sheik* that the power of the law to punish a deceased tortfeasor expires with his death.

A second explanation offered by courts following the majority rule posits that innocent beneficiaries should not suffer consequences for the willful and wanton misconduct of benefactor–tortfeasors. In my view, this notion misses the mark. A punitive damage award against the

tortfeasor's estate effects no punishment on the beneficiaries. The beneficiaries of the tortfeasor's estate are affected by all manner of their benefactor's predeath choices and conduct. In some instances a benefactor's predeath choices and conduct enhance, and in other instances diminish, the economic outcomes for his beneficiaries. For better or worse, estate beneficiaries experience the consequences of their benefactor's predeath decisions and conduct for which they are not legally or morally responsible. When a benefactor's predeath choices or conduct consistent with the law adversely affect the amount of assets available for distribution from his estate, beneficiaries are not generally shielded or held harmless. They take whatever assets are available to them from the estate consistent with the prevailing law. As the Intermediate Court of Appeals of Hawaii has observed:

> The fact that the size of the tortfeasor's estate would be reduced is not a valid reason for not entering the judgment for punitive damages against the tortfeasor's estate. The beneficiaries of the estate of the tortfeasor have no right or entitlement to more than the tortfeasor would have had if he or she had lived, or to more than the net of the tortfeasor's estate after payment of all legal obligations, including judgments against the estate for punitive damages.

*Kaopuiki v. Kealoha,* 87 P.3d 910, 928 (Haw. Ct. App. 2003).

Where the legislature has not directed otherwise, the common law of Iowa should allow punitive damage judgments against estates. The contrary rule announced in *Sheik* comes at far too great a cost to the legitimate purpose of punishment served by punitive damage judgments.

But aside from the question of whether the purpose of punishment can, and as I believe, it should, be achieved through a punitive damage remedy against the estate of a tortfeasor who willfully and wantonly injures another, I would overrule *Sheik* in furtherance of the purpose of deterrence alone. *See Penberthy v. Price,* 666 N.E.2d 352, 356–57 (Ill.

App. Ct. 1996) (finding a sufficient deterrent purpose for punitive damages against a tortfeasor's estate even if the purpose of tortfeasor punishment is not achieved). As the majority opinion correctly notes, the goal of deterrence may be viewed specifically and generally. In the context of specific deterrence, the inquiry is whether a specific tortfeasor would be motivated by the prospect of his liability for punitive damages to refrain from willful and wanton misconduct. In the context of general deterrence, the question is whether other potential actors will tend to avoid willful and wanton misconduct as a consequence of a punitive damage judgment against the specific tortfeasor's estate. I believe a common law rule authorizing a judgment for punitive damages against the estate of a tortfeasor who willfully or wantonly injured another powerfully serves as a deterrent in both contexts.

The tortfeasor who understands the distribution of the assets in his estate could be disrupted by a judgment for punitive damages—should he die as a consequence of his willful or wanton misconduct against another or from other causes prior to the entry of a civil judgment—will likely be deterred by the prospect. The purpose of deterrence is clearly advanced when a living, potential tortfeasor knows his estate plan, usually benefitting a spouse, children, family, or friends, will be disrupted by a punitive damage judgment if he engages in willful and wanton tortious conduct, whether he survives the imposition of judgment or not. The rule announced in *Sheik* and reaffirmed in this case by the majority militates against the purpose of specific deterrence for certain tortfeasors, such as one who is terminally ill or elderly or one who is contemplating a willful or wanton act calculated to cause his own death and harm another, by assuring them a crude advantage over the tortfeasor who survives his willful and wanton tort and civil judgment.

Deterrence in the general sense would also be maximized by a rule allowing judgments for punitive damages against tortfeasors' estates. Others perceiving judgments for punitive damages against tortfeasors' estates will be deterred from willful or wanton misconduct, knowing that their estate plans and loved ones will be similarly affected by their willful and wanton misconduct. The extraordinary importance of general deterrence alone justifies, in my view, the reversal of *Sheik* and the adoption of a new rule. Accordingly, I respectfully dissent.